## CITY OF BANGOR vs. FRED C. RIDLEY.

## Penobscot.    Opinion July 3, 1918.

*R. S., Chap. 4, Sec. 43, interpreted.    Right of members of City Government to contract with city.    Right of member of City Government to recover compensation for contracts entered into with the city.    Duty of persons contracting with municipality.    Action for money had and received.*

This case comes up on report.  The record shows that the defendant, Fred C. Ridley, was an alderman in the City of Bangor for the municipal year of 1915; that, during the year, under contracts with city departments, he furnished teams and drivers who performed certain services for the city; that he received payment in full in due course of business for the services rendered and, by the admission of the plaintiff, "that the city received the benefit of the men and teams furnished by him to said city  .  .  .  .  and that the prices for said teams and men were just and reasonable."

Under this state of facts the plaintiff city has brought an action for money had and received to recover back from the defendant the amount it had paid him under these contracts, upon the ground that the services were rendered in contravention of the statute, and the payments therefor were illegal.

R. S., Chap. 4, Sec. 43, reads as follows:  "No member of a city government shall be interested, directly or indirectly, in any contract entered into by such government while he is a member thereof, and contracts made in violation thereof are void."

The defendant has been paid by the city, with the approval of the department of the city government authorized to approve and pay said bill.  The issue is, has he a legal right to keep the money in defense of the pending suit?  The test of this question is found in the inquiry, had he a legal right in any form of action to recover from the city for his services?

*Held:*

1.  That he could not have maintained an action under this statute for the services rendered.

2.  The payment of the defendant's bill by the city was ultra vires and illegal.

3.  A party dealing with a municipality can reap no advantage from the fact that the contract is completed, as all parties dealing with a municipality must take notice, at their peril of its authority to act.

4.  The money being paid the defendant in violation of the city's legal rights it can be recovered back in an action for money had and received.

Action on the case to recover of defendant certain sums of money paid to said defendant by the city treasurer of the City of Bangor for the use of certain horses and teams belonging to said defendant, while he, the said defendant, was a member of the Board of Aldermen of said City of Bangor. Defendant filed plea of general issue. At close of testimony, case was reported to Law Court upon certain agreed stipulations. Judgment in accordance with opinion.

Case stated in opinion.

*James M. Gillin, City Solicitor,* for plaintiff.

*George E. Thompson, and Fellows & Fellows,* for defendant.

SITTING: CORNISH, C. J., SPEAR, KING, BIRD, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

SPEAR, J. This case comes up on report. The record shows that the defendant, Fred C. Ridley was an alderman in the City of Bangor for the municipal year of 1915; that, during the year, he furnished teams and drivers who performed certain services for the city; that he received payment, in full in due course of business for the services rendered; and, by the admission of the plaintiff, "that the city received the benefit of the men and teams furnished by him to said city. . . . and that the prices for said teams and men were just and reasonable."

Under this state of facts the plaintiff city has brought an action for money had and received to recover back from the defendant the amount it had paid him under these contracts, upon the ground that the services were rendered in contravention of the statute, and the payments therefor were illegal.

R. S., Chap. 4, Sec. 43, reads as follows: "No member of a city government shall be interested, directly or indirectly, in any contract entered into by such government while he is a member thereof, and contracts made in violation thereof are void."

The defendant has been paid by the city, with the approval of the department of the city government, authorized to approve and pay the city bills. The issue is, has he a legal right to keep the money in defense of the pending suit? We think the test of this question is found in the inquiry, had he a legal right, in any form of action, to recover from the city for his services? Applying this test, we are unable to discover any form of action upon which the defendant

could recover. The meaning of the statute is as broad as language can make it. "Any contract" in violation of the statute is void. "Any contract" embraces every kind of contract, express or implied. No action can be maintained on a void contract. *Goodrich* v. *Waterville*, 88 Maine, 39. This was an action to recover for medical attendance upon a pauper. The physician rendering the services was at the time a member of the common council of the City of Waterville. The nature of his contract of employment was precisely like that of the defendant in the present case, each contract resting upon an implied promise to pay what the services were reasonably worth. In that case the identical statute now involved was under consideration, upon which the court say: "And the statute cited declares that all such contracts shall be void. If the employment of the plaintiffs did not create such a contract, then, of course, their action is not maintainable; for such a contract is the cause of action and the only cause of action declared on. If it did create such a contract it was one in which a member of the city government was directly interested, and, for that reason, one which the statute cited declares shall be void; of course no action can be maintained upon it." Therefore, the defendant could not have recovered, for his services, on a quantum meruit, as this form of action is based upon and implied contract, and comes within the inhibition of the statute.

In view of the statute now under consideration, there is another controlling reason why the defendant should be made liable for the money received for his services. The statute in question was enacted for the express purpose of prohibiting a member of the city government from making contracts with the city. But if he can influence the city government of which he is a member, either as a matter of friendship, or corruptly, to give him employment upon a contract, express or implied, and obtain and retain his pay, for its execution, then both he and the city government can evade and nullify the effect and purpose of the statute with impunity. He has made his illegal contract. He may have influenced the city government to favor him. He has recived his compensation for executing it. If he can keep the money, the statute is dead. He has succeeded by indirection.

This interpretation is fully sustained in the opinion of the court in answer to questions propounded by the governor, found in 108 Maine on page 552, upon the construction of a statute identical in meaning with the one under consideration, in which the court say: "The

legislature must be presumed to have had in contemplation all of the contracts which might have been made by the different State officers, and to have enacted the statute for the purpose of removing any temptation on their part to bestow reciprocal · benefits upon each other, and of preventing favoritism, extravagance and fraudulent collusion among them under any circumstances which might be reasonably anticipated as likely to arise under different State governments in the years to follow."

But it may be said the city government has voluntarily paid him for his services, and as such payment was equitable, they cannot recover it back in the equitable action of money had and received. This reasoning might hold good in cases between individuals, but a municipality is a creature of the statute and can do just what the statute, and the necessary execution of the statute, permits, and cannot do what the statute inhibits. It will require no citations to show that the officers of a municipal government cannot contract to pay, expend or pay out, city funds for an illegal purpose or upon an illegal contract. It is not within the scope of their powers, and if paid the city in the proper form of action can recover it back. Otherwise municipalities might be mulcted to the verge of ruin by dishonest or incompetent officials, if having illegally paid the money out the city cannot recover it back.

A party dealing with a municipality can reap no advantage from the fact that his illegal conduct is completed, as it is incumbent upon everyone, dealing with a municipality, to discover its authority to act, or to assume the risk upon failure so to do, and deal with it at his peril. This rule needs no citation in this State, but in *Goodrich* v. *Waterville*, 88 Maine, 39, dealing with this very statute, the rule is thus tersely expressed: "All persons acting under the employment of town or city officers must take notice at their peril of the extent of the authority of such officers."

Nor is the fact that the city received full value for the money paid out, and that no harm came to the public, the test. *Lesieur* v. *Rumford*, 113 Maine, 317, is a case in which a member of the board of health was employed by the board to attend a case of smallpox. In this case no statute expressly forbade such employment; but the court held that such employment was prohibited by the spirit of the law, both the common law and statute, and based upon the rule of sound public policy. After quoting the statute under consideration

and the statute relating to the employment of persons holding places of trust in a state office, the court say: "Assuming, as we do, that these statutory prohibitions do not directly apply to a member of a local board of health, yet the principles on which they are founded are quite as applicable to a contract made by a board of health with one of its members, as to the contracts expressly inhibited in these statutes." It is further said upon page 320: "The test is not whether harm to the public welfare has in fact resulted from the contract, but whether its tendency is that such harm will result.

"Applying this rule to the contract declared on, and testing it by those principles which constitute public policy as recognized by the common law, and as evidenced by the trend of legislation and judicial decisions, we are constrained to hold that the contract does so far contravene public policy that it ought not to be upheld and enforced through the administration of the law."

There is a dictum at the end of this opinion, suggesting that an action of quantum meruit might be sustained; but this case is entirely distinguishable from the case at bar, as there was no express statutory prohibition of employment, by the board of health, of one of their members, and it may be that quantum meruit might lie; but quantum meruit is based upon an implied contract, whereby it is held, when one party knowingly receives the services of another party, and the conditions, circumstances and relations are such, that, in equity and good conscience, he ought to pay for such services, then, although no express contract exists, the law intervenes and implies a contract, that the party receiving the benefit of such services shall be held to pay what they are reasonably worth. But the moment this obligation comes into being by implication, it is an implied contract and falls within the ban of the statute and is made void thereby.

Finally, it should be noted that this statute was not enacted to prohibit the contractor, alone; with equal force it can be invoked to prohibit the city government from making "any contract" with one of its members. The language of the statute—any contract entered into—makes such a contract as void on the part of the city government as on the part of the contracting member. It makes no distinction. The contract is void on both sides. This language was undoubtedly used advisedly, for, from common knowledge, it is well known that there is a great temptation, and sometimes a positive inclination, on the part of a city government, to favor one of its

members. The statute, therefore, wisely holds, if a city government undertakes to transgress its plain duty in this regard, that whatever they do shall be regarded as void. It would, therefore, appear that the implied contract, upon which the city government paid the defendant for his services, was ultra vires on their part, was illegal on his part, and the money paid, was without authority, was in violation of the city's legal rights, and should be recovered back. It should be noted that the statute here invoked and construed applies in its terms solely to cities, and the term "municipality" or "municipal" as here used should be regarded as limited in its application to cities only.

> *Judgment for plaintiff for $495.20, and interest from the date of the writ.*

Justice KING does not concur.