JOHN L. BERGERON v. J. HOLMES JACKSON ET AL.
CHARLES J. DOLAN v. J. HOLMES JACKSON ET AL.

November Term, 1919.

Present: WATSON, C. J., TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 7, 1920.

*Municipal Corporations—Removal of Officers—Sufficiency of Charges—Implied Contract with City—Right of City Council to Prefer and Hear Charges—Estoppel—Power of Removal—Review of Findings of City Council—Contract in Violation of City Charter Void—Bad Conduct of City Officers—Urgency of Business No Excuse for Violating Charter.*

1. In proceedings by a city council to remove a street commissioner for bad conduct in being interested in a contract with the city and in furnishing the city with labor and material under a contract, in violation of the city charter, it was not necessary to allege an express contract in the charges against him; the alleging of facts which amounted to an implied contract being sufficient.

2. In such case, the strict rules of common law pleading are not required; it being sufficient if the charges fairly inform the officer to be removed of the accusation upon which he is to be tried.

3. Allegations that the firm of which the accused officer was a member furnished material and did certain work and received pay for the same from the city through the approval of the city street commissioners, contrary to the provision of section 124 of the city charter, were sufficient to apprise him of what he was charged.

4. Where material and labor were furnished by the firm of which the accused street commissioner was a member at the express request of the street commissioners' department, and were paid for out of the city treasury, they were furnished under an implied contract with the city.

5. The accused street commissioner, in furnishing the labor and material in question, was a city officer within the meaning of section 124 of the city charter.

6. The fact that the city council who preferred the charges was composed in part only of the aldermen who ordered the work done and material furnished, did not estop it from taking action in the premises; estoppel being available only in defence of a legal or equitable right, and can never be asserted to uphold crime, fraud, or wrong of any character.

7. The appointment and removal of municipal officers being a governmental act, where, from time to time, the individuals composing that power are changing, the retiring members must hand down to their successors that right unimpaired.

8. The city council had the power both to prefer and hear the charges against the accused.

9. If there is any evidence supporting the findings of the city council that the charge of negligence and bad conduct was made out, this Court will not review the findings; the weight of the evidence and the sufficiency of the cause for removal being for the determination of the city council.

10. The contract for the furnishing of the labor and material in question, being in violation of the city charter, was illegal and void.

11. It was bad conduct on the part of the firm, of which the members were city officers, to enter into such a contract and take pay from the city on account of it, and it was bad conduct on the part of the street commissioners to approve the bills, and was in violation of the express provisions of the city charter as well as of the principles of the common law, and against public policy.

12. The fact that, in the urgency of the particular case, it was impracticable and dangerous to wait for the awarding of the contract upon bids as provided for by the city charter, is no defence to a violation of the express provisions of the charter.

Two PETITIONS for writs of *certiorari,* brought to the Supreme Court for Chittenden County, to review the action of the city council of the City of Burlington in rescinding the appointments of the petitioners as street commissioners, removing them from that office, and declaring the offices vacant. The opinion states the case.

*R. E. Brown, V. A. Bullard,* and *H. S. Peck* for the petitioners.

*Theo. E. Hopkins,* City Attorney, and *Warren R. Austin* for the petitionees.

MILES, J.   This is a petition for a writ of *certiorari.*   The petitioner was duly elected street commissioner of the city of Burlington by the city council, for a term of three years from April 25, 1918, and Charles L. Dolan, another petitioner, who has also brought a petition for a writ of *certiorari* against the same petitionees, returnable at the same time, and, by agreement of parties to be heard at the same time with this case, and to be followed by the same result, was also duly elected a street commissioner by the city council for the term of three years from the 25th day of April, 1917.   The petitionees are the mayor and aldermen of the city, and constitute the city council, who, by virtue of the city charter, were vested with power to suspend or remove from office all subordinate officers, including street commissioners, for incapacity, negligence, or bad conduct.

On May 5, 1919, the city council passed a resolution that the city attorney prepare charges against Bergeron and Dolan, and to each of the charges should be attached a citation requiring the petitioners to appear before the city council at the city clerk's office at 8 p. m. May 9, 1919, to answer those charges.   In accordance with that resolution the city attorney on May 7, 1919, prepared such charges and caused them to be served as directed. The charges against Bergeron, in substance, were that the firm of John L. Bergeron & Son, consisting of the father and son, the father being a street commissioner, and the son, Victor Bergeron, being an alderman of the city, furnished material and performed labor on certain bridges and a stairway for the city, costing more than $25 in each case, and in the aggregate costing several thousand dollars, for which the firm was paid from the city funds on bills approved by the street commissioners, of which Bergeron was a member, without a contract awarded upon bids advertised by publication as required by section 124 of the city charter, and performed the labor without the supervision of the city engineer, in violation of an order of the board of aldermen of the city.   The charges against Dolan varied from those against Bergeron, in that he was not charged with performing the labor or furnishing the material, but was charged in other respects as Bergeron was charged.

By agreement of the attorneys of the respective parties the hearing set for the 9th was continued to the 31st of May, 1919, for the purpose, as the record states, "of hearing the above cause, and that the city attorney may amend and file additional charges within a week from this date with the city clerk, and furnish each opposing attorney with a copy of the same, and that hearing on such amended additional charges shall also be had at the same time with the original charges. This stipulation is made for the purpose of giving said Bergeron and Dolan all the time and opportunity which they request and deem necessary to prepare their several defences, and to enable the city attorney to file additional charges." Afterwards additional charges were filed, in substance to the effect, that the street commissioners and Bergeron without any other authority from the city council than recommendations by the mayor, failed to cause the city engineer to prepare necessary plans, specifications, and estimates for the repairs, to advertise for bids for the repairs and the material and labor, and to make and keep any record for the city council of what transactions, contracts, or undertakings were entered into by said board of street commissioners on behalf of the city, respecting such repairs; that the work done and repairs made were done and made in a negligent manner, and that the street commissioners, including the petitioners, were negligent in approving the bills of Bergeron & Son.

On May 31, 1919, the parties met at the place designated in the last adjournment and a further adjournment was taken to June 4, 1919, at which time and place the parties met and by a majority vote of the city council the additional charges were adopted. At that meeting it was arranged by consent of all parties that the evidence should be taken stenographically. The petitioners at that meeting moved to dismiss all the charges for the reason that the city attorney had no authority to prefer such charges. The motion was put to vote and was denied. By agreement that meeting was adjourned to June 17, 1919. Just before adjournment counsel for the petitioners stated: "We won't require you to file additional charges. We will consider these charges as duly made and served upon us, and we waive further service and notice; the pending motion may be withdrawn."

The parties met at the time and place named in the last adjournment, and the petitioners filed five motions, numbered, second, third, fourth, fifth and sixth, and also filed answers in

denial of the charges alleged against them. The case was afterwards heard, and a large amount of testimony taken on both sides; the hearing consuming several days. After the hearing was closed and the case submitted to the council, and after consideration thereof, the city council failed to find that the charge of incapacity was made out, but a majority found that the charges of negligence and bad conduct had been made out as charged, and thereupon rescinded the appointments of the petitioners as street commissioners, and removed them from that office, and declared the offices vacant. To this action the petitioners objected and moved to have all the charges against them dismissed, on the ground that they were not supported by the evidence. By a majority vote the motion was overruled.

This petition is brought to review that action of the city council, and the cases stand for hearing upon the questions raised by the several motions above stated, except the first and fifth, which are not insisted upon in the petitioners' briefs.

No claim is made that the work was done under a contract awarded upon bids advertised for; but the claim under the second motion is that the petitioners are not charged with having done the work and furnished the material under any contract, and that in fact the firm did not do it under any contract.

[1-3] It is true that the petitioners are not charged in express language with having furnished labor and materials under an express contract; but a set of facts are set forth in those charges which the petitionees contend amount to an implied contract, and we quite agree with that contention. A contract may be implied as well as expressed. *Porter* v. *Evert's Estate,* 81 Vt. 517, 71 Atl. 722; *Parkhurst* v. *Krellinger,* 69 Vt. 375, 38 Atl. 67; *City of Bangor* v. *Ridley,* 117 Me. 297, 104 Atl. 230. The strict rules of the common law pleading are not required in a case like this. *Rutter et al.* v. *Burke et al.,* 89 Vt. 14, 93 Atl. 842. If the charges fairly inform the officer to be removed of the accusation upon which he is to be tried, they are sufficient. It was not necessary to state in the charges in express language that Bergeron was interested in the contract. It was sufficient to allege the facts constituting the contract. This we think was done. It is alleged that the firm of Bergeron & Son furnished the material and did the work, and received pay for the same from the city through the approval of the city street commissioners, contrary

to the provision of section 124 of the city charter. This was sufficient to apprise Bergeron of what he was charged.

[4] Considering the question on Bergeron's own testimony, the materials were furnished and labor performed under an implied contract. He says that the firm did it at the request of John W. Coffey, superintendent of the streets of Burlington, and that he was paid for it out of the city treasury. Here we have the request expressly given by the street commissioners' department, the body to whom, by law, is given the general management and control of the work and repairs on the city streets and sidewalks, and the work performed and materials furnished upon that request. A fair test of this transaction may be made by supposing that the city had refused to pay the bill and the company had brought suit to collect it. Upon what ground could the company recover? But one answer can be given, and that is: Upon an implied contract. And such was the contract in this case. *City of Bangor* v. *Ridley, supra.* The motion was properly overruled.

[5] The third motion to dismiss rests upon the ground that Bergeron was not an officer of the city in performing the labor and in furnishing the material in question, within section 124 of the city charter, and that the city council had no jurisdiction in the premises. In certain circumstances and for certain purposes, municipal officers, having charge of and being required to perform certain public duties, are held to be public officers; but this by no means divests them of the character of municipal officers. Their true character is well stated in *Hartford* v. *New Bedford,* 16 Gray (Mass.) 297, wherein it is said: "The members of the fire department of New Bedford, when acting in discharge of their duties, are not servants or agents in the employment of the city, for whose conduct the city can be held liable; but they act rather as officers of the city, charged with the performance of a certain public duty or service; and no action will lie against the city for their negligence or improper conduct, while acting in the discharge of their official duty." The motion was properly overruled.

[6, 7] The fourth motion to dismiss rests upon the ground that the work was done and material furnished upon the order of the city aldermen; that the city council, who preferred the charges, are composed in part only of the aldermen who ordered the work done and material furnished, and that therefore the

city council are estopped from taking any action in the premises. Under this motion the petitioners argue the equities of the case and the injustice that would be done, if this Court were to hold that, after Bergeron had expended time and money upon the order of the aldermen, he should be deprived of the fruits of his labors and expenditures. But it is to be observed that the question here raised is not one of equitable adjustment. However it might be if the proceeding were to recover the money back or resist payment, estoppel could not be invoked to prevent an inquiry into the fitness of one of the city officers to perform his duties under the charter; for estoppel is available only in defence of a legal or equitable right or claim made in good faith, and can never be asserted to uphold crime, fraud, or wrong of any character. 10 R. C. L. 690, § 19. Nor does the fact that the city council, who preferred the charges, were composed in part of different persons than those who constituted the board at the time it is alleged that they authorized the firm to perform the work and furnish the material, aid the petitioners in their claim of estoppel; for the appointment and removal of municipal officers being a governmental act, good government requires that the appointing and removing power should not be circumscribed in the exercise of discretion, and where, from time to time, the individuals composing that power are changing, the retiring members must hand down to their successors that right unimpaired. 19 R. C. L. 893, § 193.

[8] The sixth motion to dismiss is based upon the claim that the city council as such have no power to prefer or hear the charges brought against the petitioners. The contention of the petitioners is that they cannot act in the double capacity of prosecutor and trier. But this objection is disposed of, we think, in *Rutter et al.* v. *Burke et al., supra.* There the proceedings were begun by the aldermen of the city of Burlington, who appointed a committee of three members of the board to investigate the water department and the water commissioners' conduct. The committee made the investigation, consuming several days in taking testimony. A majority of the committee made a report sustaining charges against the water commissioners; but the report was defeated by a tie vote when brought before a meeting of the aldermen. Later the mayor brought before the city council twelve written charges relating to the matters covered by the report of the committee appointed by the alder-

men, and which had been denied by tie vote at a meeting of the aldermen, and the same were tried by the city council, and the hearing was conducted by the mayor.

It was there objected that the city council as then constituted was without jurisdiction, because part of its members had prejudged the case on a former hearing, and because of the active part taken by the mayor. But this Court held that the constitution of the city council, its exclusive jurisdiction as a trier, and the diversity of duties imposed upon it, precluded the idea that impartiality can be made the test of the right of its members to sit in a hearing affecting the subordinate officers of the city government. It must be admitted that a much stronger case was there presented for holding the city council disqualified because of the dual position of prosecutor and trier, than is here presented. Here the proceedings were begun by the city attorney under the direction of the city council, by vote of that body, and, with the assistance of other counsel, prosecuted the case from beginning to end without the city council taking any further part in it, except to hear the evidence and pass upon the questions arising before it.

[9-12]   The last motion to dismiss, following the decision of the city council, that the charge of negligence and bad conduct had been made out, was based upon the claim that the findings were not sustained by the evidence. This motion in some respects resembles a motion for a directed verdict. If there is any evidence tending to support the findings of the city council, its weight and the sufficiency of the cause is for the city council to determine, and the action therein will not be reviewed by this Court. *Rutter et al.* v. *Burke et al., supra.* If either charge were supported by the evidence, the motion was properly overruled. We think there was evidence supporting the finding of bad conduct. Earlier in this opinion we have held that Bergeron did perform labor and furnish material under a contract with the city, in which he was interested, and received pay for it out of the city treasury, and it is not claimed by the petitioners that that contract was awarded upon a bid advertised for as required by section 124 of the city charter. The contract, therefore, was in violation of that section, which reads as follows: "No city officer shall be directly or indirectly interested in any contract with said city for an amount in excess of twenty-five dollars, or furnish any material or perform any labor, except in the dis

charge of his official duties, for which said city officer shall receive a sum in excess of twenty-five dollars, unless such contract shall have been awarded upon bids advertised for by publication in two issues of at least two newspapers printed in said city at least six days previous to the opening of such bids.'' Under this section of the charter the contract was illegal and void. The municipality had no power to make it. It was *ultra vires. City of Bangor* v. *Ridley, supra.* It was bad conduct on the part of Bergeron & Son to enter into the contract and take pay from the city on account of it, being, as the members were, officers of the city, and it was bad conduct on the part of the street commissioners to approve the bills, and was in violation of the express provisions of the charter as well as of the principles of the common law and against public policy. 2 Dillon Mun. Cor. (5th ed.) §§ 772, 773. It is contended by the petitioners that, in the urgency of the particular case, it was impracticable and dangerous to wait for bids and the time that would be consumed in advertising for them, and because of this they ask us to construe the section of the charter as not applying to a case like the one before us. But this we could not do without repealing the section referred to. The unfortunate condition of the case, if any exists, results from the plain and unambiguous language of the section, and the remedy is not through legislation by judicial construction, but through the legislative channels. It does not, however, clearly appear in the record that advertising for bids might not have safely been done. But, however meritorious Bergeron's claim may be, it cannot constitute a defence in this case.

*As this holding disposes of the case, it is unnecessary to pass upon the other questions raised and discussed in the briefs of counsel. The decision in this case applies alike in both cases, and the petition is dismissed in both cases, with costs to the petitionees.*