GRADY ET AL., APPELLANTS, *v.* CITY OF LIVINGSTON, CONTINENTAL OIL CO. ET AL., RESPONDENTS.

(No. 4308.)

GRADY ET AL., APPELLANTS, *v.* CITY OF LIVINGSTON, A. W. MILES CO. ET AL., RESPONDENTS.

(No. 8319.)

GRADY ET AL., APPELLANTS, *v.* CITY OF LIVINGSTON, NEAL-LANDES CO. ET AL., RESPONDENTS.

(No. 8320.)

GRADY ET AL., APPELLANTS, *v.* CITY OF LIVINGSTON, A. W. MILES LUMBER & COAL CO. ET AL., RESPONDENTS.

(No. 8321.)

(Submitted January 14, 1943. Decided July 1, 1943.)

[141 Pac. (2d) 346.]

48

*Messrs. Rockwood Brown & Horace S. Davis, Franklin S. Longan, Fred N. Dugan* and *Ben E. Berg, Jr.,* for Appellants,

*Messrs. Fred L. Gibson, Vilroy C. Miller* and *Ed C. Jones,* for Respondents,

*Messrs. Walter Aitken* and *Fred W. Schilling,* Attorneys for the Montana Municipal League, appearing as *amici curiae,* submitted a brief in support of Appellants' Petition for Rehearing.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is one of four separate actions commenced by the two taxpaying plaintiffs to recover approximately $10,000 in the aggregate paid by the city of Livingston to the corporate defendants. The plaintiffs are the same in each of the four cases but a single corporate defendant is named in each action. The four cases were briefed and argued together. The money sought to be recovered was allowed and paid on bills against the city presented in the usual form, approved and warrants issued therefor, and was for goods, wares and merchandise sold and delivered to the city by the defendant corporations, and used for municipal purposes. The city of Livingston was made a defendant when, upon demand, the city council failed and refused to commence the proceedings demanded.

The right to recover the money is predicated upon the fact that certain members of the city council and other city officials, at the times the things bought by the city were contracted and paid for, were connected with as employees or officials of the defendant corporations, and that by reason of the relations existing between such city officials and employees and the corporate de-

fendants, the contracts between the city and the defendants were alleged to be void; that the contracts being void the defendants still retain title to the goods sold the city and the city never parted with title to the money paid for the goods. No offer is made to return the goods, which the city received and used under the alleged void contracts, and it clearly appears that any return of such goods would be impossible by reason of their having been consumed or used.

The trial court made extended findings of fact. We give the substance of such as tend to emphasize the more important issues. The issues in the four cases were the same, and the Continental Oil Company case was tried as typical of the four. So far as the record shows all of the merchandise and supplies purchased from the defendant Continental Oil Company consisted of gasoline.

In Finding No. 9 the court mentions the fact that the city bought the supplies from the Continental Oil Company and the same was consumed by the city for municipal purposes in the operation and maintenance of its water works system, its street department and for other purposes, and further finds that "the said city has not offered to return, and has not returned, any thereof, but has used and consumed the same, and that it is now and was at the time of the commencement of this action, and has been at all times since the receipt of the same by the said city, impossible for it to return the same to said defendant; that said gasoline and petroleum products sold and delivered to the said city, as alleged in each of the causes of action in the complaint contained, were at the respective times of the sale thereof, and payment therefor, of the reasonable value of the prices and amounts which said city paid for the same as hereinabove set forth, and that all of the said gasoline and petroleum products sold by defendant to the city as aforesaid, were sold at the reasonable price therefor."

In Finding No. 10 the court finds that out of the money the defendant received from the city for gasoline sold to it five cents per gallon was paid by the defendant to the state of Montana as

and for the five cent tax on all gasoline sold by vendors of such products, and that pursuant to the provisions of section 2396.4, Revised Codes, the city had received back from the state such five cents per gallon as a rebate allowed on all purchases of gasoline made by the city, such rebate amounting to the sum of $351.95 and the plaintiffs in this action make no allowance for that amount. It is not to be understood that failure of plaintiffs to take this tax refund made to the city into account has any particular bearing on the merits of the actions, but certainly in an equitable action reduction of the amount demanded to the extent of such refund should have been made.

The court's Finding No. 11 is as follows:

"That all of the sales of gasoline and petroleum products made by defendant Continental Oil Co. to the said city of Livingston set forth in the complaint * * * were made * * * during the period from May 1st, 1937, to April 3d, 1939, and * * * were received and consumed * * * prior to April 3d, 1939, in the various municipal activities and business of said city, and it is, and at all times since the receipt and use thereof by said city has been, impossible for the city to return the same or any thereof * * * and idle, useless and unavailing for defendant Continental Oil Co. to demand the return thereof.

"That notwithstanding the facts and premises the plaintiffs and said city of Livingston have at all times aforesaid, and until March 29, 1940, the date of the commencement of this action, stood by, waited and forbore bringing any action or suit to enjoin the execution of any of the sales mentioned in the complaint herein, and forbore bringing any action or proceeding to set aside the same, and that none of said sales have been rescinded, and by the use and consumption of said gasoline and petroleum products said city has put it out of its power to restore same, or any thereof, to said defendant."

In other findings of the court it is set forth that the city records on two occasions were examined by the state examiner's office, approximately a year intervening between the two examinations, and following each examination written advice was sent by the

state examiner to the city officials with directions that such advice by the state examiner be read at a regular meeting of the council. The attention of the council and mayor was called to the fact that various city officials had been guilty of violating numerous statutes, particularly section 445 of the Revised Codes, but that such officials continued to authorize purchases by the city from the corporate defendants in which the various members of the council and the mayor were interested. Following the receipt of one such advice from the state examiner, the court by Finding No. 20, sets forth: "That thereafter, on December 5th, 1938, at a meeting of the city council of the defendant city, at which the defendant M. K. Musser (9) the Mayor of the said city, presided and was present, the report aforesaid of the State Examiner was read, accepted, and placed on file by the said city council; and that then and there and thereby the said defendant, M. K. Musser, learned of its contents."

In Finding No. 21 the specific statutes that were called to the attention of the mayor and city council by the state examiner are mentioned. In another finding the court sets forth that on January 4, 1940, the plaintiffs demanded of the defendant Continental Oil Company the repayment to the city of the several sums of money received by it alleged to be in violation of law. The court's conclusions of law were as follows:

"1. That the plaintiffs are not entitled, in law or in equity, to recover in this action.

"2. That the defendant, Continental Oil Co., is entitled to a dismissal of this action with its costs herein incurred.

"3. That the remaining defendants herein named are entitled to a dismissal of this action with their costs herein incurred."

Judgment in accordance with such findings of fact and conclusions of law was made and entered. The appeals are from the judgments.

The actions are in equity.

Thirty-two specifications of error are assigned, which, for the purposes of argument, are grouped by counsel for plaintiffs under three "points of law" as follows:

"1. The sales described in the complaint are wholly void because of the interest therein of the mayor and members of the city council.

"2. Where the contracts or sales involved are made contrary to the express prohibition of statute all sums paid by the municipality may be recovered with interest and without restitution made or offered for the services, goods, or other property received.

"3. The interest which invalidates is that of an employee, or of an officer or stockholder in a contracting corporation."

. We think the merits of these actions can be arrived at more directly by their consideration under the following headings which will bring before us all the essentials:

1. Are contracts made in violation of sections 444 and 445, Revised Codes, void or only voidable under section 446?

2. Do plaintiffs' bills state a cause of action?

3. Granting that the transactions between the municipality and the corporations violated the statutes, is the remedy by actions in equity or by prosecutions under the criminal law?

4. The contracts being illegal, was the city under any obligation to return the merchandise or account for its value?

5. Good faith.

We will take these questions up in the order mentioned.

No. 1. Section 445, Revised Codes, enumerates the public officials who shall not be personally interested in purchases or sales made by them in their official capacity. The individual defendants are among those enumerated. Section 446 provides: "'Every contract made in violation of any of the provisions of the two preceding sections may be avoided at the instance of any party *except the officer interested therein.*"

We will say in passing that the trial court having found that the merchandise sold by the defendant corporations to the city had been consumed and could not be returned, we are inclined to think that the plaintiffs' right to recover is barred by sections 12 and 27 of Article III of the Constitution of Montana, relating to Due Process. (See secs. 651 and 657, 12 Am. Jur.) We deem

it unnecessary however to determine that question in these actions.

Taking up the construction of section 446, Revised Codes, statutes must be construed by giving to the words employed "the approved usage of the language." (Sec. 15, Rev. Codes.) That being the statutory rule, section 446 "does not require construction, but it construes itself." (*Cruse* v. *Fischl,* 55 Mont. 258, 175 Pac. 878, 880.) This rule of statutory construction has been followed without exception in a long line of decisions by this court running over a period of sixty years, and if we now depart from that rule it will become necessary to overrule and set aside these decisions as to such rule. (*King* v. *National M. & E. Co.,* 4 Mont. 1, 1 Pac. 727; *Dunn* v. *Great Falls,* 13 Mont. 58, 31 Pac. 1017; *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 82 Pac. 833, 114 Am. St. Rep. 804, 8 Ann. Cas. 717; *Osterholm* v. *Boston & Mont. Co.,* 40 Mont. 508, 107 Pac. 499; *Cruse* v. *Fischl,* supra; *Northern P. Ry. Co.* v. *Sanders County,* 66 Mont. 608, 214 Pac. 596; *State ex rel. Mineral County* v. *State Highway Comm.,* 82 Mont. 63, 72, 265 Pac. 1; *State ex rel. Clifton* v. *State Highway Comm.,* 82 Mont. 382, 267 Pac. 499; *State ex rel.* v. *Hays,* 86 Mont. 58, 282 Pac. 32; *Great No. U. Co.* v. *Public Ser. Comm.,* 88 Mont. 180, 293 Pac. 294; *Murray Hospital* v. *Angrove,* 92 Mont. 101, 10 Pac. (2d) 577; *Chicago, M. & St. P., etc., Ry. Co.* v. *Fallon County,* 95 Mont. 568, 28 Pac. (2d) 462; *McMullen* v. *Shields,* 96 Mont. 191, 29 Pac. (2d) 652; *State ex rel. Du Fresne* v. *Leslie,* 100 Mont. 449, 50 Pac. (2d) 959, 101 A. L. R. 1329; *Vaughn & Ragsdale Co.* v. *State Board of Equalization,* 109 Mont. 52, 96 Pac. (2d) 420.) In *State* v. *Highway Comm.,* supra [82 Mont. 63, 265 Pac. 4], it was said, " 'It is not allowable to interpret what has no need of interpretation, or, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend their meaning.' "

The fact that section 446 provides that contracts made in violation thereof may be avoided by certain parties but not by others means that as against the latter such contracts are bind-

ing and effective; if such contracts were absolutely void they could have no such effect. (See *Stevens* v. *Woodmen of the World,* 105 Mont. 121, 127, 71 Pac. (2d) 898, 903.) While contracts forbidden by statute are generally spoken of as void the rule is necessarily otherwise where as here the express statutory provision is that they are only voidable and voidable only by certain interested parties and not by others, and this is particularly so where the statute prescribes a penalty for its violation. (12 Am. Jur., sec. 158, p. 654. See, also, 6 R. C. L., sec. 105, p. 700.)

American Jurisprudence as cited says: ''Where a statute which prohibits an agreement at the same time also limits its effect or declares the consequences which shall attach to the making thereof, the rule that an agreement prohibited by statute is void does not apply and the effect of such an agreement is governed by the statute.'' Section 445, Revised Codes, prohibits such contracts as those involved here, and section 10827, Revised Codes, declares the consequences that shall attach to the making of such contracts by the defendant officials.

Voidable contracts are not legally void and cannot be set aside or disregarded until they are decreed to be void by a court having jurisdiction. A contract may be obviously void, but if the parties thereto elect to proceed thereunder they may do so if no other parties are injured. If the city of Livingston chose to accept the goods it would be absurd to contend that either the city or any party acting in its behalf could be compelled to bring an action to have the contracts declared void.

In *Stevens* v. *Woodmen of the World,* supra, this court said: ''When we say that a contract is void as a result of fraud * * * all that is meant by such term, * * * is that a court of law will not lend its aid to enforce the performance of a contract. In the case of *Ewell* v. *Daggs,* 108 U. S. 143, 2 S. Ct. 408, 412, 27 L. Ed. 682, it was said, 'It is quite true that the usury statute referred to declares the contract of loan, so far as the whole interest is concerned, to be void ''and of no effect.'' But these words are often used in statutes * * * in the sense of voidable merely, that is, capable of being avoided, and not as meaning that the act or

transaction is absolutely a nullity. * * * It is sometimes said that a deed obtained by fraud is void, meaning that the party defrauded may, at his election, treat it as void. All that can be meant by the term, according to any legal usage, is that a court of law will not lend its aid to enforce the performance of a contract which appears to have been entered into by both the contracting parties for the express purpose of carrying into effect that which is prohibited by the law of the land.' '' The fact that the city in the cases at bar, or any other party than the interested official had the right of election in the premises, clearly makes such contracts voidable only. It appears to us to be too clear to require argument that the purpose of section 446 is to leave the public body which may be a party to such contracts free to accept or reject such contracts at its option.

It is true that we adopted our sections 444, 445, and 446 from California's Political Code, and that the supreme court of that state in *Berka* v. *Woodward,* 125 Cal. 119, 57 Pac. 777, 45 L. R. A. 420, 73 Am. St. Rep. 31, held a similar contract void and denied the culpable city official any restitution. Other California cases cited by plaintiffs followed the *Berka case,* except *Miller* v. *City of Martinez,* 28 Cal. App. (2d) 364, 82 Pac. (2d) 519, the decision in which was determined under an entirely different statute, and that case is not in point here. The *Berka case* furnished a pattern that has since been followed in that jurisdiction. The rule there adopted is not, in our opinion, a logical interpretation of section 922 of the California Political Code, which has its counterpart in our section 446. Their rule follows the old common law rule rather than the statute. We are not unmindful of the rule to the effect that, when one jurisdiction adopts a statute from another the adopting jurisdiction also adopts the construction placed on the statute by the highest court of the state from which the statute is taken. But we have laid down a further rule which is that "this court will not blindly follow the construction given a particular statute by the court of a state from which we borrowed it, when the decision does not appeal to us as founded on right reasoning." (*Ancient Order of*

*Hibernians, etc.,* v. *Sparrow,* 29 Mont. 132, 74 Pac. 197, 198, 164 L. R. A. 128, 101 Am. St. Rep. 563, 1 Ann. Cas. 144. See, also, *In re Murphy Estate,* 99 Mont. 114, 125, 43 Pac. (2d) 233.) Any statute that is construed to mean something contrary to the plain wording thereof is not entitled to approval on the ground that it is "founded on right reasoning." Furthermore, the *Berka* case was decided in 1899 and our sections 445 and 446, inclusive, appeared in our 1895 Codes. Our adoption, therefore, was prior to the decision in the *Berka case,* and the rule mentioned as to adoption does not apply in the cases at bar. Prior to the decision in the *Berka case,* this court had rendered its decision in *State ex rel. N. W. Natl. Bank* v. *Dickerman,* 16 Mont. 278, 40 Pac. 698, and in *Morse* v. *Granite County,* 19 Mont. 450, 48 Pac. 745, thereby establishing rules in this jurisdiction directly opposed to the holdings of the California courts construing the statutes mentioned. We think our construction of the statutes involved is more in accord with "sound reasoning" than those to the contrary cited from other jurisdictions. The contracts involved in these actions were not void but could have been avoided by timely action brought by any interested party other than the interested officials. Section 446 is not susceptible of any other reasonable construction.

No. 2. Do the complaints or bills state a cause of action? The contracts being not void but voidable they cannot be avoided without restoring the consideration or otherwise doing equity. Since the complaints show affirmatively that restoration cannot be made no cause of action is stated. Plaintiffs' pleadings utterly fail to show any financial injury to anyone, but rather the violation of a criminal statute, not by the defendants from whom the plaintiffs seek redress but by the individual defendants named in the bills but from whom no recovery is sought.

No. 3. We think the plaintiffs have mistaken their remedy. Sections 444 and 445 apply only to public officials, not to sellers of goods. Section 446 applies only to contracts in which the public officials mentioned in the two prior sections might be interested. Other sellers are not enjoined to observe any of the

provisions of sections 444 and 445 and could not, except as possible accomplices, violate any of those laws as such laws apply to public officials only. We do not think there is any rule of equity that empowers any court to penalize a corporation on the ground that one of its agents, while serving a municipality, violated his trust as an officer of the municipality. The respective obligations of the official to his employer on the one hand and to the municipality on the other are separate and distinct. There is no relation whatever between the two. The employer is no more blamable for the action of the employee public official than the city. The remedy for violation of either does not depend in the slightest degree upon the other. The code sections mentioned and section 10827 were obviously intended to punish and to purge the public service of persons who betray the public trust reposed in them, not to confiscate the property of business concerns whose employees they happen to be. There is another, and a distinct remedy for the latter.

Counsel for plaintiffs, under the heading ''Conclusion'' at the close of his brief, confirms our view that the plaintiffs' remedy does not lie in equity, but in criminal actions. In plaintiffs' ''Conclusion'' it is said,

''What has been written on both sides of the controversy at bar must not serve, we note again, to obscure the fundamental issue before this Court. The respondents have repeatedly broken the criminal statutes of this state. * * *

''Are these respondents then entitled to any rights in equity to protect them in their possession of what amounts to the fruits of crime? The decided cases in point abundantly answer this query in the negative.

''Counsel on the other side have not argued this question at all as we read their brief. Nor as we understand the views of the trial court was this question decided below.

''Rather the rights of the parties were adjudged as though there were no violation involved of a penal statute, no crime committed and unblushingly admitted. * * *

''If they cannot find their property, the rights of the munici-

pality are not in any degree lessened. It in its turn is entitled to its own, viz: its moneys unlawfully and illegally paid over to criminals, and by them had in hand as the profits of their crime. These profits they must disgorge.''

In passing it is noteworthy that what plaintiffs seek to make the defendants ''disgorge'' is not merely the *profits* of the transactions but the entire amount the city paid for the goods it has consumed.

It must also be kept in mind that the actions before us are in equity, not criminal prosecutions. In 10 R. C. L., page 341, section 91, we read: ''Barring these possible exceptions, therefore it is a universally acknowledged principle that a court of equity has no jurisdiction in matters merely criminal or immoral. It leaves the correction of these matters to the criminal courts. The remedy at law by indictment and prosecution is presumed to be adequate, but if it is not so, the relief must come from the law-making power, and not from the courts.''

This court said in *State ex rel. Stewart* v. *District Court*, 77 Mont. 361, 370, 251 Pac. 137, 139, 49 A. L. R. 627, ''It is now universally held that, except where there is express statutory authority therefor, equity has no criminal jurisdiction, and the acts or omissions will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes.''

In *Huntington* v. *Attrill*, 146 U. S. 657, 664, 13 S. Ct. 224, 227, 36 L. Ed. 1123, it was said: ''Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state and which, by the English and American constitutions the executive of the state has the power to pardon. Statutes giving a private action against a wrongdoer are sometimes spoken of as penal in their nature but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal. * * *

''The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual. * * *

''Crimes and offenses against the laws of any state can only be

defined, prosecuted, and pardoned by the sovereign authority of that state; * * *.''

It should be further remembered that under our laws no person ▆▆▆ may be branded as a criminal unless and until he be proceeded against by indictment or information in a proceeding that measures up to the constitutional requirements of due process of law. Section 10827, Revised Codes, provides severe punishment for the violation of section 445, and the guilt of the individual defendants in these actions may not be presumed in advance of a fair trial. ''No person can be punished for a public offense, except upon a legal conviction in a court having jurisdiction thereof.'' (Sec. 11606, Rev. Codes.) And, ''a defendant in a criminal action is presumed to be innocent until the contrary is proved.'' (Sec. 11971, Rev. Codes.)

No. 4. Should plaintiffs be decreed the right to recover the ▆▆▆ moneys paid to the corporations without restoring the goods? Or, in other words, may the city in these equitable actions, avoid fully performed contracts, even where made in violation of a specific statute, and recover the money paid for the merchandise received under the contract, where, as here, it is admitted that the merchandise has been used and cannot be restored? Not without abrogating the established rule in this jurisdiction.

In *Morse* v. *Granite County*, supra, this court permitted a ▆▆▆ recovery against the county because it had obligated itself, not by the voidable contract, but by keeping and using the property in spite of the fact that the contract was voidable. So here, having kept and consumed the goods in face of the fact that they were purchased under a voidable contract, the city is obligated to return the merchandise or pay the reasonable value thereof, and it therefore follows that the city cannot, after consuming the goods, and being unable to restore them, sue and recover the money paid for the goods. Obviously plaintiffs assume that because the vendee in the contracts is a municipality, a public body, a creature of the state, it is not amenable to the same rules of equity that maintain where the parties to such actions are

private persons. The assumption ignores that profound obligation that rests upon the state, as the exemplar of law and justice, to observe with the strictest nicety all its contractual obligations irrespective of the perfidy or criminal liability of the other contracting party. Even if the state deal with a criminal behind the bars of prison, it would be contemptible for the state to fail to do equity. There is imposed upon the subdivision of the state and the municipalities created by state authority, a like obligation. Equity makes no distinction between public bodies and private persons as to obligations arising out of contract. (*State ex rel. N. W. Bank* v. *Dickerman,* supra; *Morse* v. *Granite County,* supra; *First Nat. Bank* v. *Valley County,* 112 Mont. 18, 113 Pac. (2d) 783; *First Nat. Bank* v. *Village of Goodhue,* 120 Minn. 362, 139 N. W. 599, 43 L. R. A. (n. s.), 84; *Frisch* v. *City of St. Charles,* 167 Minn. 171, 208 N. W. 650; *Quackenbush* v. *City of Cheyenne,* 52 Wyo. 146, 70 Pac. (2d) 577; *City of Concordia* v. *Hagaman,* 1 Kan. App. 35, 41 Pac. 133.) So long as we are proceeding in equity, we must observe the rule that ''He who seeks equity must do equity,'' and not revert to the principles of the old common law applied under ''bills of attainder and corruption of blood'' and forfeit the criminal's property, particularly where, as here, the parties who appear to have violated the law have yet to be brought to trial.

The correct rule in our opinion appears in an early California case, the pertinent part of which is quoted by this court in *State ex rel. N. W. Bank* v. *Dickerman,* supra [16 Mont. 278, 40 Pac. 700], where it is said: ''The city is not exempted from the common obligation to do justice, which binds individuals. Such obligation rests upon all persons, whether natural or artificial. If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it. * * * (*Argenti* v. *San Francisco,* 16 Cal. [255], 282.) The legal liability springs from the moral duty to make restitution; and we do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated. The

law countenances no such wretched ethics. Its command *always* is to do justice.''

The rule on restoration applied in the *Dickerman case* was followed in *Morse* v. *Granite County*, supra, and *Hicks* v. *Stillwater County*, 84 Mont. 38, 274 Pac. 296, and in *First Nat. Bank* v. *Valley County*, supra.

Since the contracts by which the city obtained the goods were voidable, it could sue to recover the excess of the contract price over the real value, if any; which means again that it cannot equitably keep the goods and their value too. In other words, the statute not being penal, punitive nor one of forfeiture, the city cannot avoid the contract and recover the consideration paid, where it has consumed the goods, and has paid no more than their value. In equity, ''the city is not exempted from the common obligation to do justice, which binds individuals.'' (*State* v. *Dickerman*, supra.) This court said, in *First Nat. Bank* v. *Valley County*, 112 Mont. 18, 113 Pac. (2d) 783, 784, with reference to the *Morse case* ''the lower court was reversed, not on the theory that the sale was legal under the statute, but that the county could not retain the property and refuse to pay for it.'' That opinion was rendered by this court only two years ago.

No. 5. The question of good faith is not an issue in these actions. It would be a vital issue in fixing the penalty to be imposed under section 10827, Revised Codes, if conviction were had in a criminal action, but not in an equity action. The fact that the interested city officials persisted in their illegal practices after being warned by the state examiner that their acts constituted a violation of the statute, would preclude the officials from any plea of good faith as a defense in a criminal action.

The lower court must be affirmed. First, because the actions do not state a cause of action in equity, no pecuniary injury being shown. Second, the record strongly tends to show the defendants have committed a criminal, but not a civil offense, and the offense is against the state, not the plaintiffs, and any recovery of a pecuniary nature would be payable to the state, not to the city of Livingston. Third, we decline by our judgment to commit the

state to a violation of a fundamental maxim of equity in order that delinquent city officials or their employers may be punished indirectly, by way of forfeiture, for violations of a criminal statute, particularly where, as here, there is a full and complete remedy at law provided by section 10827, Revised Codes.

The judgments are affirmed.

MR. CHIEF JUSTICE JOHNSON concurs.

MR. JUSTICE ANDERSON concurring specially:

By section 444, Revised Codes, public officers, including city officers, are prohibited from being interested in any contract made by them in their official capacity. By section 445, they are prohibited from being purchasers at any sale or vendors at any purchase made by them in their official capacity. By section 5069, Revised Codes, all city officers are prohibited from being interested in the profits of any contract made by the city council while they are or were in office.

By section 10827, Revised Codes, the violation by a public officer of any of the prohibitions declared in the above mentioned sections is made a public offense for which he may be punished by fine or imprisonment, coupled with disqualification from holding public office.

The law in these four sections is a prohibition directed against the officers personally. As to the transactions and the property rights resulting, the only statutory provision declaring the effect thereon of the law violation is in section 446, Revised Codes, which says that contracts made in violation of any of the provisions of sections 444 and 445 may be avoided at the instance of any party except the officers interested therein. So far as we have statutory law, the question before us then narrows down to the meaning of the provision for avoiding the contracts. The provision is that the contracts ''may be avoided.''

Whatever might have been done to avoid any contracts made in the transactions under consideration—that, it seems, would necessarily have to be done in each instance before the transaction was

in every way completed, or at least while the parties could still be put in *statu quo ante*.

Here, all of these transactions were fully completed. The goods were bought and delivered; paid for and used. There was no more any contract. The contract was done. There could be no refusal to perform nor any injunction against performance. The relation between the parties had gone beyond the point where there was any contract to avoid.

With no provision as to the contract rights resulting other than that in section 446, there is no statutory authority for recovery in these suits; nor do we find any decisions of our own court declaring a policy which entitles plaintiffs to recover. On the contrary, the decisions, wherein the principle here involved has been dealt with, all point to a policy opposed to the right of recovery under the facts and circumstances here relied on. (*Morse* v. *Granite County*, 19 Mont. 450, 48 Pac. 745; *Hicks* v. *Stillwater County*, 84 Mont. 38, 274 Pac. 296; *Hill County* v. *Shaw & Borden Co.*, 9 Cir., 225 Fed. 475; *Smith Engineering Co.* v. *Rice*, 9 Cir., 102 Fed. (2d) 492; *First Nat. Bank of Nashua* v. *Valley County*, 112 Mont. 18, 113 Pac. (2d) 783.)

The rule adopted and adhered to in these decisions is that the unlawful personal interest of an officer of a municipal corporation in the subject matter of a transaction which he handles in his official capacity does not of itself relieve the municipality from its obligations under the circumstances arising. The municipality may refuse to be bound by the transaction and may avoid the contract entered into. But if it accepts and retains the fruits of the transaction, it must pay the value thereof. It cannot relieve itself of the obligation alone because of the unlawful personal interest of its officer.

Applying that rule to the cases before us, plaintiffs cannot recover. I fully concur in the opinion of Mr. Justice Morris sustaining the judgments of the lower court.

MR. JUSTICE ADAIR:

I dissent. These cases involve the established public policy of

this state as formulated by prohibitions of the legislature and by a long line of well-considered decisions of this court. "The prohibition of the legislature cannot be disregarded by the courts." (*McManus* v. *Fulton,* 85 Mont. 170, 278 Pac. 126, 130, 67 A. L. R. 690.) For more than half a century, has this court consistently followed the doctrine announced by Chief Justice Field in the early California case of *Zottman* v. *San Francisco,* 20 Cal. 96, 81 Am. Dec. 96. This constitutes the rule in the federal courts and in the courts of a majority of the states. For the California cases see: *Zottman* v. *San Francisco,* supra; *Berka* v. *Woodward,* 125 Cal. 119, 57 Pac. 777, 45 L. R. A. 420, 73 Am. St. Rep. 31; *Levinson* v. *Boas,* 150 Cal. 185, 88 Pac. 825, 12 L. R. A., (n. s.), 575, 11 Ann. Cas. 661; *Stockton Plumbing & Supply Co.* v. *Wheeler,* 68 Cal. App. 592, 229 Pac. 1020; *Shasta County* v. *Moody,* 90 Cal. App. 519, 265 Pac. 1032; *Miller* v. *City of Martinez,* 28 Cal. App. (2d) 364, 82 Pac. (2d) 519; *City of Oakland* v. *California Construction Co.,* 15 Cal. (2d) 573, 104 Pac. (2d) 30; *Miller* v. *McKinnon,* 20 Cal. (2d) 83, 124 Pac. (2d) 34, 140 A. L. R. 570.

The majority opinion herein not only declines to follow the salutary rule of the *Zottman case,* supra, but it repudiates same and, in effect, overturns the doctrine announced by this court in numerous decisions, including *Lebcher* v. *Commissioners of Custer County,* 9 Mont. 315, 23 Pac. 713; *State ex rel. Lambert* v. *Coad,* 23 Mont. 131, 57 Pac. 1092; *Williams* v. *Board of Com'rs,* 28 Mont. 360, 72 Pac. 755; *State ex rel. Helena Waterworks Co.* v. *Helena,* 24 Mont. 521, 63 Pac. 99, 55 L. R. A. 336, 81 Am. St. Rep. 453; *Helena W. W. Co.* v. *City of Helena,* 27 Mont. 205, 70 Pac. 513; *Missoula Street Railway Co.* v. *City of Missoula,* 47 Mont. 85, 130 Pac. 771; *School District No. 2 of Silver Bow County* v. *Richards,* 62 Mont. 141, 205 Pac. 206; *McManus* v. *Fulton,* supra; *Commonwealth Public Service Co.* v. *City of Deer Lodge,* 96 Mont. 48, 29 Pac. (2d) 667.

This court declines to permit the plaintiff taxpayers to recover for the use of the city of Livingston the money judgments demanded assigning the quite unusual reasons that: (1) No pecuniary injury to the taxpayers is shown; (2) the forbidden

acts are crimes against the state and not against the taxpayers; (3) any money recovered by the taxpayers would be payable to the state and not to the city of Livingston; (4) a complete remedy at law is supplied by section 10827, Revised Codes, in providing that the offending officials are "punishable by a fine \* \* \* or by imprisonment in the county jail or state prison \* \* \* and \* \* \* forever disqualified from holding any office in this state"; and (5) judgment against the vendor corporations for the respective amounts had and received by them would violate a fundamental maxim of equity and would inflict upon them punishment, indirectly, for violations of criminal statutes by the delinquent city officials as their employees. Additionally, the specially concurring opinion holds that the taxpayers are too late with their complaints; that they should have been quicker on the trigger in order to catch up with the culprits "in each instance before the transaction was in every way completed, or at least while the parties could still be put in *statu quo ante.*"

These transactions, all forbidden by express statutes, are wholly illegal and void from beginning to end. "It is considered that a contract void in its inception is not validated by performance and remains a void contract." (*Bechtold* v. *City of Wauwatosa,* 228 Wis. 544, 277 N. W. 657, 280 N. W. 320, 322.)

The speed with which the offending city officials allowed and approved the claims of the vendor corporations which they directed and managed and the speed with which the city's money was handed over in payment of these claims has no influence whatever on the right of the taxpayers to maintain these actions for the recovery of the money so illegally expended and to thereby vindicate a public and common right to have the public funds preserved from spoliation by public officials. "The power to successfully maintain such an action has never been limited to cases where the work has not yet been done, and, if it were, there would be few cases where unfaithful public officials and designing contractors could be prevented from despoiling the public treasury. *The right does not depend upon the speed with which*

*the law is broken."* (*Cawker* v. *City of Milwaukee,* 133 Wis. 35, 113 N. W. 417, 418.) (Emphasis mine.)

The complaints herein clearly set forth all the facts essential to state causes of action in favor of the plaintiff taxpayers. (See *Judith Inland Transp. Co.* v. *Williams,* 36 Mont. 25, 91 Pac. 1061; *Donovan* v. *McDevitt,* 36 Mont. 61, 92 Pac. 49; *School District No. 2 of Silver Bow County* v. *Richards,* supra; *Osburn* v. *Stone,* 170 Cal. 480, 150 Pac. 367; *Independent School District* v. *Collins,* 15 Idaho 535, 98 Pac. 857, 128 Am. St. Rep. 76, 14 C. J. 938; 18 C. J. S., Corporations, sec. 567; *Sioux Falls Taxpayers Ass'n.* v. *Sioux Falls,* S. D. 1942, 7 N. W. (2d) 136.)

Because of the questions of public policy involved and because of the far reaching effect of this departure from the doctrine so long followed by this court, I deem it advisable to review both the facts shown by the record herein and the rules of law applicable to those facts.

*The Facts*: Paul L. Greene, as Mayor, and John Grady, as a taxpayer of the city of Livingston, plaintiffs, brought these four separate lawsuits to recover, on behalf of said city, money claimed to have been illegally taken and expended from the city's treasury and had and received by the four defendant corporations for materials purchased from them by the city council—(a) in violation of section 5070, Revised Codes, and Chapter 18, Session Laws of 1939, requiring competitive bidding on all contracts for materials where the amount involved exceeds $500, and (b) in violation of sections 5069, 444 and 445, Revised Codes, which forbid a public officer from being interested, either directly or indirectly in the contracts made by a governing body of which he is a member.

The defendant M. K. Musser was the mayor and Daniel N. Miles, E. M. Sybert and E. L. Neal were members of the city council of the defendant city of Livingston, Montana, from May 1, 1937, to May 1, 1939.

During this time the defendant mayor, M. K. Musser, was also general agent and manager of the Livingston office and plant of the defendant Continental Oil Company, a corporation; the de-

fendant councilman Daniel N. Miles was also the president, a director and a stockholder of the defendant, the A. W. Miles Company, a corporation, and of the defendant A. W. Miles Lumber & Coal Company, a corporation, the defendant councilman E. M. Sybert was also secretary-treasurer and a director and stockholder of the defendant A. W. Miles Lumber & Coal Company, and the defendant councilman E. L. Neal was also the president and a director and a stockholder of the defendant Neal-Landes Company, a corporation.

At various times during this period the city, through its council, purchased supplies and materials in varying amounts from the four defendant corporations.

The claims, which the defendant corporations presented to the city for the merchandise so sold and delivered, were passed upon and allowed by the city council on which council sat the respective vendor corporations' managing officers.

In July, 1937, the state examiner examined the books of the city. His written report of July 14, 1937, addressed and delivered to the defendant mayor, M. K. Musser, and to the city council states: ''Your attention is directed to Sections 444 and 5069, Revised Codes 1935, relating to officers interested in contracts. The sections should be read at the next regular meeting of the Council and the fact reported to this department.'' The minutes of the city council for August 4, 1937, recite that a meeting of the council was held on that date with the defendant mayor, M. K. Musser, presiding and all members of the council present, including the three defendant councilmen, viz: Miles, Sybert and Neal, where the examiner's said report was read, accepted and placed on file.

The council, notwithstanding, continued to purchase materials and supplies for the city from the defendant corporations. Some sixteen months later the state examiner again examined the books and affairs of the city, following which he made another written report to said mayor and city council wherein he said: ''We noted a great many claims for supplies furnished by city officials. Section 5069, Rev. Codes, 1935, relating to officers inter-

ested in contracts, provides that any officer, councilman or any relative or employee thereof, must not be directly or indirectly interested in the profits of any contract entered into by the council, while he is in office or while he was in office. Section 7581 defines sales as a contract. (See Sections 10827, 444, 445, 446, 448 and 449, Rev. Codes 1935.) These sections should be read at the next regular meeting of the Council and the fact reported to this department. Violations of conducting sales under contract to the City in violation of section 5069 are very serious matters."

The state examiner then wrote the city clerk as follows:

"Helena, November 28, 1938.

"Mr. Andrew Peterson, Jr.

"City Clerk

"Livingston, Montana

"Dear Mr. Peterson:

"Under date of November 23rd we forwarded your report of the last examination on the City of Livingston. To the last paragraph of the 'Examiner's Notes' contained in the report, will you kindly add the following:

"The sections referred to herein are as follows: Section 5069. 'The mayor, or any member of the council, or any city or town officer, or any relative or employee thereof, must not be directly or indirectly interested in the profits of any contract entered into by the council while he is or was in office.'

"Section 10827. 'Every officer or person prohibited by the laws of this state from making or being interested in contracts, or from becoming a vendor or purchaser at sales, or from purchasing scrip, or other evidences of indebtedness, who violates any of the provisions of such laws, is punishable by a fine of not more than one thousand dollars, or by imprisonment in the county jail or state prison not more than five years, and is forever disqualified from holding any office in this state.'

"Chapter 52, R. C. M. 1935—Section 444. 'Members of the legislative assembly, state, county, city, town, or township officers, must not be interested in any contract made by them in

their official capacity, or by any body or board of which they are members.'

"Section 445. 'State, county, town, township, and city officers must not be purchasers at any sale, nor vendors at any purchase made by them, in their official capacity.'

"Section 446. 'Every contract made in violation of any of the provisions of the two preceding sections may be avoided at the instance of any party except the officer interested therein.'

"Section 448. 'Every officer whose duty it is to audit and allow the accounts of other state, county, city, township, or town officers, must, before allowing such accounts, require each of such officers to make and file with him an affidavit that he has not violated any of the provisions of this chapter.'

"Section 449. 'Officers charged with the disbursement of public moneys must not pay any warrant or other evidence of indebtedness against the state, county, city, town, or township, when the same has been purchased, sold, received, or transferred contrary to any of the provisions of this chapter.'

"Will you kindly see the printer and have him publish this report accordingly?

"Yours truly,
"S. L. Kleve
"Chief Examiner."

The minutes of the city council for December 5, 1938, recite that at a meeting whereat Mayor M. K. Musser presided and councilmen Miles, Sybert and Neal were present, the examiner's above report "was presented to the Council the same having been read in full by each member of the Council was ordered accepted, approved and filed."

The members of the city council, however, continued as theretofore, to purchase merchandise for the city from the defendant corporations.

The merchandise has lost its identity. None remains in specie. All has been consumed.

On January 2, 1940, the plaintiffs demanded of the city that

it bring suit to recover the moneys so illegally expended from the city treasury but the city refused so to do.

Plaintiffs also made demand upon the defendant corporations to pay into the city treasury all moneys received by them under such contracts. On the refusal of the defendant corporations to pay, plaintiffs on March 29, 1940, commenced these four separate lawsuits to recover on behalf of the city the respective amounts of money claimed to have been illegally expended from the city's treasury and had and received by the four defendant corporations for materials and supplies so furnished by them under said contracts with said city council.

The complaint in each case sets forth numerous separate causes of action. A money judgment in a definite, ascertained amount, is demanded in each case. An aggregate of $1,641.14 is demanded of the defendant, Continental Oil Company in twenty-five causes of action; $630.92 is demanded of the defendant, the A .W. Miles Company in twenty-five causes of action; $7,348.65 is demanded of the defendant, A. W. Miles Lumber & Coal Company in forty causes of action and $335.45 is demanded of the defendant, Neal-Landes Company in nine causes of action.

In their answers the defendant corporations admit practically all of the sales charged and admit that at the time such sales were made four members of the city council were then also managing officers or managing agents of one or more of the vendor corporations.

In the A. W. Miles Lumber & Coal Company case, No. 8321, it is charged that, without advertising or calling for bids and with no competitive bidding or letting to the lowest responsible bidder, the defendant corporation sold to the City of Livingston a quantity of merchandise for the price of $1,330.36. The evidence sustains such allegations and shows that on June 7, 1937, the city's warrant No. 2839, in the amount of $1,330.36, payable to the order of the defendant Miles Lumber & Coal Company, was issued in payment of the above merchandise and thereafter cashed.

*The Law.* The legislative authority of the state is vested in

the legislature. It has the power to legislate, i.e., to enact laws. (Constitution of Montana, Art. VI, sec. 1.)

Municipal corporations "are creatures of the law, and not of nature. They have not natural rights, but only rights given by the law. Their contracts obtain validity only by force of the law authorizing their making. It follows that, if they make contracts that the law does not empower them to enter into, there is no authority for such contract,—nothing for it to stand upon,—and it falls of its own weight. It is void." (*Lebcher* v. *Commissioners of Custer County,* 9 Mont. 315, 320, 23 Pac. 713, 714.)

It is therefore a primary rule that municipal corporations can exercise no powers other than those expressly conferred by the legislative Acts of the state or, necessarily implied to carry out the powers expressly granted by the statutes.

Another fundamental rule is that the delegated powers of all subordinate state agencies, including municipal corporations, are subject to legislative control as to the manner in which they may be exercised. Thus a statute providing that every contract for the purchase of supplies involving the expenditure of money beyond a fixed sum shall be let by competitive bidding is a limitation upon the power granted which would be completely nullified if the law should allow a recovery, either directly or indirectly, to one furnishing such supplies upon the order of municipal officers given in disregard of the statutory requirements. (*Zottman* v. *San Francisco,* 1862, supra; *Hague* v. *City of Philadelphia,* 1865, 48 Pa. 527; *McDonald* v. *New York,* 1876, 68 N. Y. 23, 23 Am. Rep. 144; *Missoula Street Railway Co.* v. *City of Missoula,* supra; *School District No. 2 of Silver Bow County* v. *Richards,* supra; *Commonwealth Public Service Co.* v. *City of Deer Lodge,* supra.) Of course where there is no such express statutory provision, the contract need not be let to the lowest responsible bidder. (*Missoula County Free High School* v. *Smith,* 91 Mont. 419, 8 Pac. (2d) 800.)

*Statute re Competitive Bidding.* The law of public corporations being primarily statutory, Montana's legislature has spoken and formulated the public policy of this state by providing, with

74

respect to municipal corporations, that "all contracts for work, or for supplies or material, for which must be paid a sum exceeding five hundred dollars ($500.00), must be let to the lowest responsible bidder." (Sec. 5070, Rev. Codes of Montana 1935, and Chapter 18, Session Laws of 1939, page 26.) These statutes are mandatory and prohibitory.

The above statutes are constitutional. They were intended to safeguard the interests of the city and its taxpayers. They were enacted by the legislature for the purpose of preventing favoritism and graft and to check municipal extravagance and corruption. (*Fox* v. *Sloo*, 1850, 10 La. Ann. 11; *Fox* v. *City of New Orleans*, 1857, 12 La. Ann. 154, 68 Am. Dec. 766.)

"All experience teaches the utter impossibility of wholly preventing unfairness, and advantage taken in the execution of public contracts, even with the most vigilant watchfulness of the public interest. * * * Now, more than ever, do we need a rigid enforcement of public contracts, and a stricter moral discipline, to defeat the varied plans by which money is taken from the treasury without authority. The older we grow as a people, the more systematized and difficult of detection do the schemes become for plundering the public; and among them all, none are more prominent or successful than those which concern contracts and jobs. The very elections of the people are sometimes guided and controlled by the unseen hands of rapacity. Fraudulent claims, fraudulent prices, fraudulent receipts, and fraudulent practices are often winked at or shared in by officials in disregard of honour, honesty, and oaths. Of course we know nothing, indeed no hint has been given to us, of the merits of this case, and our remarks have no relation to its facts. But we refer to those known devices and schemes of public plunder occurring so frequently, to vindicate the principle of our decision, and give forth a note of warning to those who may feel disposed to embark in such dangerous enterprises." (*Hague* v. *City of Philadelphia*, supra.)

The record herein shows that the statutes requiring competitive

bids and the letting to the lowest responsible bidder were disregarded and violated.

What results attend this willful disobedience of the law?

First. The law says: "Failure to comply with this statute renders a contract void." (*Commonwealth Public Service Co.* v. *City of Deer Lodge,* supra [96 Mont. 48, 29 Pac. (2d) 671].) Also to same effect see *Missoula Street Ry. Co.* v. *City of Missoula,* supra, and *School District No. 2 of Silver Bow County* v. *Richards,* supra.

Second. "A municipality does not become liable for * * * goods upon principles of unjust enrichment where it is prohibited from contracting in any other than a specified way, as, for instance, with the lowest bidder." (*Shulse* v. *Mayville,* 223 Wis. 624, 271 N. W. 643, 645.) To the same effect see *Missoula Street Ry. Co.* v. *City of Missoula,* supra; *School District No. 2 of Silver Bow County* v. *Richards,* supra; *Commonwealth Public Service Co.* v. *City of Deer Lodge,* supra; *Federal Paving Corporation* v. *City of Wauwatosa,* 231 Wis. 655, 286 N. W. 546; *Journal Printing Co.* v. *Racine,* 210 Wis. 222, 264 N. W. 425; *Kernin* v. *City of Coquille,* 143 Or. 127, 21 Pac. (2d) 1078; *City and County of Denver* v. *Moorman,* 95 Colo. 111, 33 Pac. (2d) 749; *Horrabin Paving Co.* v. *Creston,* 221 Iowa 1237, 262 N. W. 480; *United States Rubber Co.* v. *Tulsa,* 103 Okl. 163, 229 Pac. 771; *Standard Pavinng Co.* v. *Wewoka,* 170 Okl. 272, 39 Pac. (2d) 536.)

Third. Respecting the vendor corporations, the law says: "Persons contracting with such artificial creations of the law as municipal corporations and public officers are charged with notice of the character and constitution of the entity with which they deal. They know the law, and know what are valid acts of such artificial persons. They contract at their peril. * * * If the contract in question were void, the plaintiff cannot recover thereon. The only authority that the commissioners * * * had to make the contract is found in the statutes above cited." (*Lebcher* v. *Commissioners of Custer County,* supra.) To the same effect see *Missoula St. Ry. Co.* v. *City of Missoula,* supra;

*United States Rubber Co.* v. *Tulsa,* supra; *Western Paint &
Chemical Co.* v. *Garfield County,* 161 Okl. 300, 18 Pac. (2d) 888;
*Cobb* v. *Norman,* 179 Okl. 126, 64 Pac. (2d) 901.

*Statute forbidding Interest in Contracts.* Pursuant to the
power vested in it by the Constitution, the legislature enacted
section 5069, Revised Codes of Montana 1935, which provides:
''The mayor, or any member of the council, or any city or town
officer, or any relative or employee thereof, *must not be directly
or indirectly interested* in the profits of any contract entered into
by the council while he is or was in office.'' (Emphasis mine.)
This statute is but declaratory of the common law.

''Independently of any statute or precedent, upon the general
principles of law and morality, a member of an official board
cannot contract with the body of which he is a member. To
permit it would open the door wide to fraud and corruption. The
other members of the board in allowing compensation thus to one
of their members would be aware that each of them in turn might
receive contracts and good compensation, and thus public office,
instead of being a public trust, would become, in the language of
the day, 'a private snap.' '' (*Davidson* v. *Guilford County,* 152
N. C. 436, 67 S. E. 918, 919. See, also, 12 Am. Jur., Contracts,
sec. 158, p. 652, sec. 167, pp. 662, 663, sec. 202, p. 703; 43 Am.
Jur., Public Officers, sec. 266, pp. 81, 82, sec. 300, pp. 107, 108;
6 R. C. L., Contracts, sec. 98, pp. 692, 693, sec. 99, pp. 693, 694,
sec. 106, p. 699, sec. 106, p. 701, sec. 108, p. 702, sec. 120, p. 712,
sec. 144, p. 739, sec. 145, pp. 739, 740.)

''When a person is inducted into an office he thereby becomes
empowered to exercise its powers and perform its duties, not for
his but for the public benefit.'' (*People ex rel. Robertson* v.
*Van Gaskin,* 5 Mont. 352, 374, 6 Pac. 30, 38.) Section 5069, Re-
vised Codes, supra, is mandatory. It is prohibitory. It is part of
the law of this state. It proclaims the public policy of the state.

The statute must be obeyed. The express prohibitions so en-
acted by the legislature may not be ignored. He who disregards
them does so at his peril.

When the legislature enacted section 5069, Revised Codes, and

other statutes of similar import, it intended that its mandates be obeyed. It placed teeth in the law by providing: "Every officer or person prohibited by the laws of this state from making or being interested in contracts, or from becoming a vendor or purchaser at sales, or from purchasing scrip, or other evidences of indebtedness, who violates any of the provisions of such laws, is punishable by a fine of not more than one thousand dollars, or by imprisonment in the county jail or state prison not more than five years, and is forever disqualified from holding any office in this state." (Sec. 10827, Rev. Codes.)

The executive department of this state, through its state examiner, warned the city officials that the sales and purchases so made in violation of the express statutes prohibiting same are serious matters. The law lays its heavy hand upon all who disobey or who aid and abet others in their unlawful design to directly or indirectly defeat the law and evade its mandates, irrespective of whether they are individuals or private corporations.

Disobedience spells ruin. For the offending city officials violation of the law results in disgrace. It brands the violator as a felon. It may take from him his money by the imposition of a fine. It may deprive him of his liberty. It denies to him forever the right to again occupy a position of public trust. As to the vendor corporations that participate in the unlawful design of the offending city officials, the law says, "They contract at their peril." (*Lebcher* v. *Commissioners of Custer County,* supra.) Disregard of the law may result in the insolvency, i. e., the financial ruin of such corporations. (*McManus* v. *Scheele,* 116 La. 72, 40 So. 535.)

What are the results which attend the making of the contracts of sale with a municipality contrary to the public policy of the state and in violation of the express statutes forbidding same?

First. The legislature has provided that, "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, *the entire contract is void.*" (Sec. 7506, Rev. Codes.) (Emphasis mine.)

Second. The legislature has provided: "That is not lawful which is: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or, 3. Otherwise contrary to good morals." (Sec. 7553, Rev. Codes.)

Third. The legislature has provided that the disobedience of the sections 5069, 444 and 445, Revised Codes, constitutes a felony. (Sec. 10827, Rev. Codes.)

Fourth. The legislature has provided that the violation of such statutes is punishable by fine or imprisonment in the county jail or in the state prison. (Sec. 10827, Rev. Codes.)

Fifth. The legislature has provided further that the public officials violating such statutes shall be "forever disqualified from holding any office in this state." (Sec. 10827, Rev. Codes.)

Sixth. Contracts made in violation of such statutes so expressly forbidding same are contrary to public policy and absolutely and wholly void and of no legal effect. (*Lebcher* v. *Commissioners of Custer County*, supra; *State ex rel. Lambert* v. *Coad*, supra; *Missoula Street Railway Co.* v. *City of Missoula*, supra; *Spaulding* v. *Maillet*, 57 Mont. 318, 188 Pac. 377; *School District No. 2 of Silver Bow County* v. *Richards*, supra; *McManus* v. *Fulton*, supra; *Commonwealth Public Service Co.* v. *City of Deer Lodge*, supra; *Central Transportation Co.* v. *Pullman's Palace-Car Co.*, 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; *Williams* v. *City of Fargo*, 63 N. D. 183, 247 N. W. 46, 53; *Common School District No. 61* v. *Twin Falls Bank & Trust Co.*, 50 Idaho 711, 4 Pac. (2d) 342; 6 R. C. L., sec. 10, page 591; secs. 7506 and 7553, Rev. Codes.)

"Where a statute designed for the protection of the public prescribes a penalty, that penalty is the equivalent of an express prohibition, and a contract in violation of its terms is void." (*McManus* v. *Fulton*, supra [85 Mont. 170, 278 Pac. 130, 67 A. L. R. 690].)

Seventh. The law permits no recovery on such void contracts so forbidden by express statute either on a theory of implied contract or *quantum meruit*, or upon a basis of estoppel or laches

or upon the doctrine of unjust enrichment or upon any other equitable ground or consideration. (*Missoula Street Ry Co.* v. *City of Missoula,* supra; *City of Northport* v. *Northport Townsite Co.,* 27 Wash. 543, 68 Pac. 204; *Federal Paving Corp.* v. *City of Wauwatosa,* 231 Wis. 655, 286 N. W. 546, at page 548; *McManus* v. *Scheele,* 116 La. 72, 40 So. 535; *Bay* v. *Davidson,* 133 Iowa 688, 111 N. W. 25, 9 L. R. A. (n. s.), 1014, 119 Am. St. Rep. 650; *Peet* v. *Leinbaugh, Mayor et al.,* 180 Iowa 937, 943, 164 N. W. 127; *West Tennessee Power & Light Co.* v. *City of Jackson,* 6 Cir., 1938, 97 Fed. (2d) 979; *Scofield Engineering Co.* v. *City of Danville,* 4 Cir., 1942, 126 Fed. (2d) 942; *Thomas* v. *City of Richmond,* 12 Wall. 349, 79 U. S. 349, 20 L. Ed. 453; *Central Transportation Co.* v. *Pullman's Palace Car Co.,* 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; *City of Astoria* v. *American La France Fire Engine Co.,* 9 Cir., 225 Fed. 21; *Ottumwa Ry. & Light Co.* v. *City of Ottumwa,* Iowa, 178 N. W. 905; *Wertz* v. *Shane,* 216 Iowa 768, 249 N. W. 661; *Thomas* v. *City of Richmond,* 12 Wall. 349, 79 U. S. 349, 20 L. Ed. 453; *Edison Electric Co.* v. *City of Pasadena,* 9 Cir., 178 Fed. 425; *City of Ft. Scott* v. *W. G. Eads Brokerage Co.,* 8 Cir., 117 Fed. 51; *West Tennessee Power & Light Co.* v. *City of Jackson,* 6 Cir., 97 Fed. (2d) 979; *Whiteside* v. *United States,* 93 U. S. 247, 23 L. Ed. 882; *Fox* v. *City of New Orleans,* 12 La. Ann. 154, 68 Am. Dec. 766; *City of Chaska* v. *Hedman,* 53 Minn. 525, 55 N. W. 737; *Griffin* v. *City of Shakopee,* 53 Minn. 528, 55 N. W. 738; *King* v. *Mahaska County,* 75 Iowa 329, 39 N. W. 636; *Reichard* v. *Warren County,* 31 Iowa 381; *Cedar Rapids Water Co.* v. *Cedar Rapids,* 118 Iowa 234, 91 N. W. 1081; *Connolly* v. *Des Moines,* 200 Iowa 97, 204 N. W. 284; *Peterson* v. *Town of Panora,* 222 Iowa 1236, 271 N. W. 317; *Johnson County Sav. Bank* v. *City of Creston,* 212 Iowa 929, 231 N. W. 705, 237 N. W. 507, 84 A. L. R. 926; *Jones* v. *Pinellas County,* 81 Fla. 613, 620, 88 So. 388; *Robert G. Lasseter & Co.* v. *Taylor,* 99 Fla. 819, 827, 128 So. 14, 69 A. L. R. 689; *Jersey City Supply Co.* v. *Mayor of Jersey City,* 71 N. J. L. 631, 60 Atl. 381, 2 Ann. Cas. 507; *Peck-Williamson Co.* v. *Steen School Township,* 30 Ind. App. 637, 66 N. E. 909; *Buchanan Bridge Co.* v. *Camp-*

80

*bell*, 60 Ohio St. 406, 54 N. E. 372; *McDonald* v. *Mayor, etc., of City of New York*, 68 N. Y. 23, 23 Am. Rep. 144; *Roemheld* v. *City of Chicago*, 231 Ill. 467, 83 N. E. 291; *Richardson* v. *Grant County, C. C.*, 27 Fed. 495; *Norbeck & Nicholsen Co.* v. *State*, 32 S. D. 189, 142 N. W. 847, 849, Ann. Cas. 1916A, 229; 21 Cal. Jur., sec. 68, p. 888.)

Eighth. Where a contract is of a class expressly forbidden by statute, the acceptance of benefits by the city raises no implied obligation on the part of the city to pay therefor. (*State ex rel. Helena Waterworks Co.* v. *Helena*, supra; *Helena W. W. Co.* v. *City of Helena*, 27 Mont. 205, 70 Pac. 513; *Zottman* v. *San Francisco*, supra (cited with approval in *Missoula Street Ry. Co.* v. *City of Missoula*, supra); *Reichard* v. *Warren County*, 31 Iowa 381; *McNay* v. *Town of Lowell*, 41 Ind. App. 627, 82 N. E. 778; *Bay* v. *Davidson*, 133 Iowa 688, 111 N. W. 25, 9 L. R. A. (n. s.), 1014, 119 Am. St. Rep. 650; *Edison Electric Co.* v. *Pasadena*, 9 Cir., 178 Fed. 425, 431; *Williams* v. *Fargo*, 63 N. D. 183, 247 N. W. 46; *Waisman* v. *Wagner*, 227 Wis. 193, 278 N. W. 418; *American-LaFrance & Foamite Industries* v. *Arlington County*, 164 Va. 1, 178 S. E. 783, 785; *City of Bristol* v. *Dominion Nat. Bank*, 153 Va. 71, 149 S. E. 632, 636; *Perry Water, Light & Ice Co.* v. *City of Perry*, 29 Okl. 593, 120 Pac. 582, 584, 39 L. R. A., (n. s., 72; *Independent School District No. 5* v. *Collins*, 15 Idaho 535, 98 Pac. 857, 128 Am. St. Rep. 76; 3 McQuillin Municipal Corporations, 2d Ed., sec. 1274, p. 820.)

Ninth. Money paid by a municipal corporation upon a void contract may be recovered back by such corporation; or, in case the proper authorities refuse to do so, a taxpayer thereof may do so for the benefit of such corporation. (*School District No. 2 of Silver Bow County* v. *Richards*, supra; *Independent School District ex rel. Moore* v. *Collins*, supra; *Common School District No. 61* v. *Twin Falls Bank & Trust Co.*, supra; *Sioux Falls Taxpayers Ass'n* v. *City of Sioux Falls*, supra; *Miller* v. *McKinnon*, supra; *Ritchie* v. *City of Topeka*, 91 Kan. 615, 138 Pac. 618; *Brown* v. *Walker*, 188 N. C. 52, 123 S. E. 633; *City of Bangor* v. *Ridley*, 117 Me. 297, 104 Atl. 230; *Stone* v. *Bevans*, 88 Minn. 127,

92 N. W. 520, 97 Am. St. Rep. 506; *Michaud* v. *Inhabitants of St. Francis,* 127 Me. 255, 143 Atl. 56; *Iowa Electric Co.* v. *Incorporated Town of Winthrop,* 198 Iowa 196, 198 N. W. 14; *Bergeron* v. *Jackson,* 94 Vt. 91, 108 A. 912; *City of Chaska* v. *Hedman,* 53 Minn. 525, 55 N. W. 737; *Griffen* v. *City of Shakopee,* 53 Minn. 528, 55 N. W. 738; *Burns* v. *City of Nashville,* 142 Tenn. 541, 221 S. W. 828; *Dale* v. *School District No. 9 of Bennett County,* 66 S. D. 346, 283 N. W. 158; *Fox* v. *City of New Orleans,* 12 La. Ann. 154, 68 Am. Dec. 766; *Wertz* v. *Shane,* supra; *Githens* v. *Butler County, Mo. Sup.,* 165 S. W. (2d) 650.)

Tenth. ''In cases where the suit would be antagonistic to the interest of the officers of the corporation, or the circumstances such that it cannot be brought and directed by such officers without serious embarrassment to them, they are improper parties to bring the suit, and no demand on them is necessary.'' (*Burns* v. *City of Nashville,* 142 Tenn. 541, 221 S. W. 828, 837.) See also to same effect, *School District No. 2 of Silver Bow County* v. *Richards,* supra, and *State Bank of Outlook* v. *Sheridan County,* 72 Mont. 1, 230 Pac. 1097.

Eleventh. ''A void contract need not be rescinded.'' (12 Am. Jur. sec. 437, p. 1017.) ''A void contract is no contract at all; it binds no one and is a mere nullity. * * * It requires no disaffirmance to avoid it and it cannot be validated by ratification. A contract wholly void is void as to everybody whose rights would be effected by it if valid.'' (12 Am. Jur., sec. 10, p. 507.)

Twelfth. ''A purchase by a trustee or agent of the particular property of which he has the sale, or in which he represents another, whether he has an interest in it or not,—*per interpositam personam,*—carries fraud on the face of it.'' (*Michoud* v. *Girod,* 4 How. 503, 553, 11 L. Ed. 1076, 1098. See, also, 12 Am. Jur., sec. 202, p. 703; 43 Am. Jur., sec. 266, pp. 81, 82, sec. 300, pp. 107, 108.)

Thirteenth. The filing, as required by section 5071, Revised Codes, by the defendant corporations, with the city clerk of the statements under oath declaring that no person forbidden by law has any interest in the contracts could not have been truthfully

made under the circumstances here. To obtain the city's money by falsely making the required statement is to perpetuate fraud. To willfully and knowingly make such false statement under oath is to commit perjury.

Fourteenth. The plaintiff taxpayers were not required as a condition precedent to recovery to re-deliver or offer to re-deliver or restore to the defendant sellers the property received by the city under such forbidden contracts. (*School District No. 2 of Silver Bow County* v. *Richards,* supra; *State ex rel. Helena Waterworks Co.* v. *Helena,* supra; *Helena W. W. Co.* v. *City of Helena,* supra; *Missoula Street Ry. Co.* v. *City of Missoula,* supra; *Bay* v. *Davidson,* 133 Iowa 688, 111 N. W. 25, 9 L. R. A., (n. s.), 1014, 119 Am. St. Rep. 650; *McNay* v. *Town of Lowell,* 41 Ind. App. 627, 84 N. E. 778; *Independent School District No. 5* v. *Collins,* supra; *Edison Electric Co.* v. *Pasadena,* 9 Cir., 178 Fed. 425, 431; *Williams* v. *Fargo,* 63 N. D. 183, 247 N. W. 46; *Waisman* v. *Wagner,* 227 Wis. 193, 278 N. W. 418; *American-LaFrance & Foamite Industries* v. *Arlington County,* 164 Va. 1, 178 S. E. 783, 785; *City of Bristol* v. *Dominion Nat. Bank,* 153 Va. 71, 149 S. E. 632, 636; *Perry Water, Light & Ice Co.* v. *City of Perry,* supra; 3 McQuillin Municipal Corporations, 2d Ed., sec. 1274, p. 820; *A. L. Greenburg Iron Co.* v. *City of Abbeville,* 5 Cir., 2 Fed. (2d) 559; *McCrary Co.* v. *City of Glennville,* 149 Ga. 431, 100 S. E. 362; *Berlin Iron Bridge Co.* v. *City of Antonio, C. C.,* 62 Fed. 882; *Buchanan* v. *Litchfield,* 102 U. S. 278, 293, 26 L. Ed., 138.)

When the defendant corporations commenced to deliver merchandise to the city they knew the contracts were illegal. They supplied the goods with full knowledge of this fact. The defendant sellers were therefore not misled and they are not now in a position to assert that the plaintiff taxpayers were estopped to question the liability of the municipality. (*Missoula Street Ry. Co.* v. *City of Missoula,* supra.)

For the vendor corporations through their managing officers to aid and abet those same managing officers, as members of the city council, to violate the law, is to participate in such unlawful

intention. Thereby are the resulting contracts corrupted and made void. (6 R. C. L., Contracts, sec. 103, p. 698.)

"As a corporation is without sensibilities, it can only have vicarious knowledge of any fact, and the knowledge of its managing officers must necessarily constitute the knowledge required by the statute." (*Daly* v. *Swift & Co.*, 90 Mont. 52, 63, 300 Pac. 265, 268.)

The vendor corporations were parties to the forbidden contracts. One and the same set of individuals managed both the city and the vendor corporations. Not only did the defendant corporations participate in the unlawful design of the offending city officials but they received the profits of the enterprise. They reaped the fruits of the illegal and void contracts. They pocketed the money so illegally taken from the city's treasury and handed to them by their stockholder, director, city official, managing officer. This money they received with guilty knowledge of where and how it had been obtained. Like the chief priests who took the thirty pieces of silver, the defendant corporations should have said: "It is not lawful for to put them into the treasury." (Matt. 27:6.) Without right or warrant of law was this money taken from the city's treasury. The law requires that it be put back.

Reluctant to return the money to the city, the vendor corporations ask that the forbidden contracts be held merely voidable and not void. The legislature, however, has already branded them as illegal, unlawful and void as have the prior decisions of this court. " 'A contract expressly prohibited by a valid statute is void. *This proposition has no exception,* for the law cannot at the same time prohibit a contract and enforce it. *The prohibition of the legislature cannot be disregarded by the courts.'* " (*McManus* v. *Fulton,* supra.) (Emphasis mine.)

The doctrines of waiver, estoppel and laches have no possible application in cases such as these. There can be no waiver of any of the advantages of the statutes designed to protect the public and the legislature has expressly provided that "a law established for a public reason cannot be contravened by a private agree-

ment.'' (Sec. 8742, Rev. Codes. See, also, *Ottumwa Ry. & Lt. Co.* v. *City of Ottumwa,* supra; *Meek* v. *Wilson,* 283 Mich. 679, 278 N. W. 731; *Federal Paving Corp.* v. *City of Wauwatosa,* supra.)

''The doctrine of estoppel by conduct or by laches has no application to an agreement or instrument which is illegal because it violates an express mandate of the law or the dictates of public policy. Neither action or inaction of a party to such an agreement can validate it; and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity.'' (12 Am. Jur., sec. 222, pp. 740, 741.)

''A municipality or other governmental agency is not estopped to deny the validity of an act or contract beyond its power, and this rule has been applied although the public has accepted benefits or money has been expended on the faith of such act or contract. * * * The doctrine of estoppel may not be applied against a municipal corporation or similar body where the subject matter of the act or contract is illegal or *malum prohibitum;* nor may such a body be estopped to deny liability under a contract which is void.'' (31 C. J. S., Estoppel, p. 427, sec. 143.)

The plaintiffs herein are taxpayers of the city of Livingston and estoppel most certainly may not be invoked against them. They were not parties to the contracts. They had nothing whatever to do with the illegal purchases. ''A person is not estopped from denying the validity of a contract to which he was not a party, and the particulars of which he did not know.'' (*McManus* v. *Scheele,* supra [116 La. 72, 40 So. 537]. See, also, *Missoula Street Ry.* v. *City of Missoula,* supra; *Miller* v. *McKinnon,* supra; *Thomas* v. *West Jersey R. Co.,* 101 U. S. 71, 25 L. Ed. 950; *Los Angeles Dredging Co.* v. *Long Beach,* 210 Cal. 348, 291 Pac. 839, 71 A. L. R. 161, 167.)

I cannot agree with the construction placed upon section 446, Revised Codes, by the majority opinion. While section 446 has not heretofore been construed by this court, yet courts of other jurisdictions have interpreted the same or similar statutes. (See *Smith* v. *City of Albany,* 1875, 61 N. Y. 444, 447; *President, etc.,*

*of City of San Diego* v. *San Diego & L. A. R. Co.*, 44 Cal. 106; *Wilbur* v. *Lynde*, 49 Cal. 290, 19 Am. Rep. 645; *Santa Ana Water Co.* v. *Town of San Buenaventura, C. C.*, 65 Fed. 323; *Clark* v. *Utah Construction Co.*, 51 Idaho 857, 8 Pac. (2d) 454.) These cases hold that such provisions do not remove from contracts, made in violation of express statutes, their void character. Montana's section 446 is word for word the same as original section 922 of the California Political Code and section 388, Idaho Compiled Statutes (1919). California borrowed her sections 920, 921 and 922 of the Political Code from the state of New York and sections 386, 387 and 388, Idaho Compiled Statutes (1919) and sections 444, 445, and 446, Revised Codes of Montana (1935) in turn were borrowed from California. When our legislature adopted such statutes, it also adopted the construction theretofore placed upon same by the courts of New York and California.

Long before any of the contracts or transactions here involved were entered into, the attorney general of Montana, in his published opinion No. 133, Volume 15 of Attorney General's Opinions, 101, held void as against public policy a contract to build a school house where one of the school trustees letting the contract was the spouse of the contractor to whom the contract was awarded. In this opinion, he said: "Although the language of Section 446 might lead to the belief that the contract is merely voidable, yet, the contract being contrary to public policy, we think should be held to be absolutely void. (*McManus* v. *Fulton*, supra; *Berka* v. *Woodward*, supra; 13 C. J. 420, 425; 2 Page's Law of Contracts, Section 1020).'' Again, in his *Opinion No. 183*, Volume 15 of Attorney General's Opinions, page 131, the Attorney General held void, as violative of section 5069, Revised Codes, and as contrary to the public policy of this state, a contract for city lighting by a municipality and a lighting company in which the city mayor then was a stockholder.

In 1872, the California legislature re-enacted sections 1, 2 and 3 of the Act of 1851, the wording thereof being identical with sections 444, 445 and 446 of Montana's present Political Code. Long before Montana had enacted these statutes they had been

construed by the courts of both New York and California. The holdings of these courts are all against the construction given the statutes by the majority opinion herein.

In the early case of *Smith* v. *City of Albany,* supra, the court said: "The rule upon this subject, as well as the reason for it, is so clearly stated by the late Justice Story in his treatise on Agency, as to render a restatement of it in the words of its learned author quite appropriate. 'It may,' he said, 'be correctly said with reference to Christian morals, that no man can faithfully serve two masters whose interests are in conflict. If, then, the seller were permitted, as the agent of another, to become the purchaser, his duty to his principal and his own interest would stand in direct opposition to each other; and thus a temptation, perhaps in many cases too strong for resistance by men of feeble morals or hackneyed in the common devices of worldly business, would be held out, which would betray them into gross misconduct and even into crime. It is to interpose a preventive check against such temptations and seductions that a positive prohibition has been found to be the soundest policy, encouraged by the purest principles of Christianity. This doctrine is well settled at law. And it is by no means necessary in cases of this sort that the agent should make any advantage by the bargain. Whether he has or not the bargain is without any obligation to bind the principal.' While efforts have been made to evade this rule, its justice has never been questioned; it is a rule of necessity, which the test of experience has rendered inflexible. * * * The Act of 1843 (Session Laws of that year, p. 36) making it unlawful for a member of any common council of any city in this State to become a contractor under any contract authorized by the common council and *authorizing such contracts to be declared void at the instance of the city, has not wrought a change in the rule referred to; it is, so far as it goes, simply declaratory of the law as it existed previous to its passage. It does not encroach upon the common law, and is not, therefore, to be construed strictly.*" (Emphasis mine.)

In *Santa Ana Water Co.* v. *Town of San Buenaventura, C. C.,*

65 Fed. 323, 327, a contract between town trustees and one Arnaz and associates was held absolutely void because one of the town's trustees was jointly interested with Arnaz and his associates in the subject matter of the contract. The court's interpretation of the California statute (identical with section 446, Rev. Codes), holding that same does not remove from the contract the character of absolute nullity, commends itself to me as sound law. In his opinion, Judge Ross said:

"* * * I am of the opinion that the contract was absolutely void, and not merely voidable. The common law, on grounds of public policy, prohibits a trustee from contracting with himself. So does the statute of California. (Hitt. Gen. Laws, p. 699; Pol. Code, secs. 920-922.) The state statute referred to contains the further provision that every such contract may be avoided by any party interested therein, except the officer or officers making the contract or having an interest in it; and it is contended for the complainant that the effect of this provision of the statute is to remove from such contracts the character of absolute nullity, and make them voidable merely. A similar statute of New York was held by the commission of appeals of that state to be merely declaratory of the common law so far as it goes, in the case entitled *Smith* v. *City of Albany,* 61 N. Y. 444. And such is evidently the view taken by the supreme court of California of the California statute; for in *Wilbur* v. *Lynde,* 49 Cal. 290 [19 Am. Rep. 645], where certain trustees of a corporation executed to themselves, on behalf of the corporation, its promissory notes, the supreme court of California held their action contrary to public policy and absolutely void, saying that the case came fully within the doctrine of the preceding case entitled [*President, etc., of City of*] *San Diego* v. *San Diego & L. A. R. Co.,* 44 Cal. 106. * * *

"A similar ruling was made by the same court in the more recent case of *Davis* v. *Mining Co.,* 55 Cal. 359 [36 Am. Rep. 40]. The principle governing such cases is applicable alike to all officers and trustees of public and private corporations. (1 Dill. Mun. Corp. sec. 444.) To permit a trustee to convey the interests

of his *cestui que* trust to another, himself thereby securing an undisclosed interest with that other, would be to sanction a violation of the plainest principles of honesty and fair dealing. Such, according to the evidence in this case, was the transaction surrounding and entering into the contract in question, and it was for that reason void *ab initio*. * * *''

It is also to be observed that section 446, Revised Codes, is specifically directed and applies only to ''the two preceding sections'' being the general sections 444 and 445, Revised Codes. It in no wise or manner refers to section 5069, Revised Codes, the violation of which constitutes a felony under section 10827, Revised Codes.

In *Clark* v. *Utah Construction Co.*, 51 Idaho 587, 8 Pac. (2d) 454, 458, 459, the court, in construing section 388, Idaho Compiled Statutes (identical with section 446, Rev. Codes) said: ''It will be noted that this section [388] expressly refers to violations of sections 386 and 387, immediately preceding it, and that all of these sections are general in their nature. The act complained of here is in violation of section 3515, and constitutes a felony under section 8122. It is directly prohibited without any restrictions whatsoever, and no one participating therein can acquire any rights thereby, defeasible or otherwise. To hold otherwise would amount to condonation of a crime. In our opinion, the provisions of section 388 do not warrant any such construction as contended for by respondent. It provides that the contract 'may be avoided at the instance of any party except the officer interested therein.' The fair import of this language is, not to impute any validity to the illegal transaction, but to grant authority to any party to attack it, as distinguished from the corporate body; and to refuse all relief to a guilty officer.''

I cannot agree that these actions are in equity; nor, that the plaintiff taxpayers have mistaken their remedy.

I view each count of each complaint as an action at law to recover a money judgment ascertained and certain in amount. (*Judith Inland Transportation Co.* v. *Williams*, 36 Mont. 25, 91 Pac. 1061.) This particular form of action was invented by the

common law judges to obtain relief from the common law procedure which, in many cases of merit, afforded no remedy. This was one of the common counts,—more specifically one of the money counts. It is the simplest action known to the law, being less restricted and less fettered by technical rules and formalities than any other form of action. (*United States* v. *Jefferson Electric Mfg. Co.,* 291 U. S. 386, 54 S. Ct. 443, 78 L. Ed. 859.) Each cause of action meets all the requirements of an action for money had and received. (*Donovan* v. *McDevitt,* 36 Mont. 61, 92 Pac. 49.)

The right of plaintiffs to maintain these suits to recover the moneys alleged to have been illegally expended is recognized in the decisions of this court though not specially granted by statute. ''The right of the plaintiff to maintain the action cannot be questioned. This is a taxpayer's suit, but the judgment recovered inures to the benefit of the school district. Plaintiff could gain nothing from a successful termination of the action except the benefit common to all taxpayers which would accrue from preserving the public funds from unlawful dissipation.'' (*School District No. 2 of Silver Bow County* v. *Richards,* supra [62 Mont. 141, 205 Pac. 207]. See, also, *Osburn* v. *Stone,* 170 Cal. 480, 150 Pac. 367; *Sioux Falls Taxpayers Ass'n* v. *Sioux Falls,* supra.)

Under the circumstances here, the plaintiff taxpayers were not required by either the law or common sense to do the impossible and restore to the vendors the merchandise which had been consumed. Where the goods are no longer in specie and where, through no fault of plaintiffs, restoration has been rendered impossible or impracticable, plaintiffs may still recover the moneys so illegally expended from the public treasury. Even though the property had not been consumed, still the plaintiff taxpayers ''had no more authority than a stranger to redeliver, or offer to redeliver, the property to the seller.'' (*School District No. 2* v. *Richards,* supra.) It is true that in their answers defendants have pleaded certain equitable defenses but the complaints, presenting as they do actions at law, are not changed into

actions in equity by the interposition of such defenses. (*Smith* v. *Barnes*, 51 Mont. 202, 149 Pac. 963, Ann. Cas. 1917D, 330.)

In *Noxubee County Hardware Co.* v. *City of Macon*, 90 Miss. 636, 1907, 43 So. 304, it is said: ''There are some things which are so well settled that it is surprising that we should have to re-state them. It is utterly immaterial, where the great paramount public policy of the state is involved in the effective administration of the constitutional provision (section 109), whether Holberg sold goods cheaper than Horton, or whether either or both were attempting to get a monopoly of the town's trade, or whether either or both acted in good faith in whatever sales they did make, or whether either or both sold the goods at a reasonable and fair price whilst they were aldermen of the said town, or whether both were guilty of fraud and *in pari delicto*. * * * These questions are all utterly immaterial and wholly out of place, when the effort is here to have enforced a wise and salutary policy of protection for all the people by the Constitution in section 109. Private interests sink utterly out of sight. The public interest is supreme in controversies like this. These principles are so well settled that a short restatement of them is surely all that can be called for.

''The state cares nothing about Holberg or Horton, or their concerns. The state cares everything that the salutary principle of public policy embodied in this section 109 shall be faithfully and fearlessly carried out, so as to prevent graft of every possible sort, and secure the honest and clean administration of municipal affairs. * * * The town of Macon will come by its proper rights when both these gentlemen resign as aldermen and resume their business as merchants, which, in view of the provision of section 109 of the Constitution, we have no doubt they will promptly do. It may be that they have acted in actual ignorance of the true construction of this section. They will be without that excuse in the future. In this day of almost universal trouble in municipalities all over these United States in respect to an absolutely fair, clean, and impartial administration of municipal affairs, it is of the very last importance that a constitutional provision

like the one here involved shall receive at the hands of this court a construction that will make impossible any maladministration along this line in city affairs."

That the vendors are corporations does not relieve them from the results attendant to entering into void contracts with the city council. "Corporations are not emancipated from the binding effect of the clause in question. A corporation would endanger its very existence if it were to engage in such joint works with officers of a municipality or in any other venture in face of a positive prohibition in public interest." (*McManus* v. *Scheele,* supra.)

The merchandise supplied to the city by the defendant corporations consisted of coal, cement, lumber, tile, hardware, building materials, chemicals, gasoline, oil and various other supplies and materials, all of which had been consumed before the suits were commenced. A different rule applies in such cases than where the merchandise remains in specie. When the goods are still in specie and title has failed to pass by reason of the contract of sale being void, usually the vendor may retake his property without serious inconvenience to the municipality. However where it is physically impossible to return the goods to the vendor because of their consumption, then the rule is that the municipality is not liable, even for the reasonable value of the merchandise so consumed. This distinction is recognized in *Municipality of Rio Piedras* v. *Serra, Garabis & Co.,* 1 Cir. 1933, 65 Fed. (2d) 691, 703, where the court held that a municipality was not estopped to deny liability for medicines and supplies furnished it without authority when such medicines and supplies had been consumed and could not be returned, saying: "If the medicines were in existence and in the defendant's possession so that they might be returned, it could be required to restore them or to pay their reasonable value—but that is not this case."

In the annotation in 93 A. L. R. at page 442, it is said: "The general rule is well established that where, under a contract which is merely invalid and not fraudulent or *malum in se,* one has furnished to a municipality or other political subdivision,

real or personal property, whether or not enhanced by his own labor, which property the public fails to pay for, he may upon equitable terms recover it in specie, if recovery may be had without material injury to other property and without causing the public any inconvenience other than results from depriving it of that to which it has no just claim.''

The above general rule is not applicable here for the reasons: (1) The merchandise delivered is no longer in specie; (2) the contracts here involved are forbidden by express statutes; (3) the contracts are against public policy; (4) they are presumptively fraudulent; (5) recovery of the property may not be had without material injury to other property; and (6) as to the consumed property, it is physically and wholly impossible to return same.

In 6 R. C. L., Contracts, section 98, pages 692, 693, it is said: ''At no time in the history of the common law were contracts in violation of law regarded as valid. Individuals were never allowed to stipulate for iniquity. A contract, though it may be based on consent, derives its obligatory force from the sanction of the law. It would therefore be anomalous indeed if the law were to sanction contracts which violate the law. The law, which prohibits the end, will not lend its aid in promoting the means designed to carry it into effect. It will not promote in one form that which it declares wrong in another. The whole doctrine relating to illegal contracts is founded on a regard for the public welfare. In fact, it has been asserted that the maintenance of this doctrine is essential to the preservation of the state.''

''* * * Dealings between a public officer and himself as a private citizen, that bring him into collision with other citizens equally interested with himself in the integrity and impartiality of the officer, are against public policy. * * * The reason is that in such case the member's public duty and his private interests are directly antagonistic. It matters not if he did in fact make his private interests subservient to his public duties. *It is the relation that the law condemns, not the results.* It might be that in a particular case public duty triumphed in the struggle

with private interests; but such might not be the case again or with another officer, and the law will not increase the temptation or multiply opportunities for malfeasance. Neither will it take the trouble to determine whether in any case the result show a wrong or crime, but it absolutely and unequivocally refuses its sanction to any contract of any kind whatever where such relation exists." (6 R. C. L., Contracts, sec. 145, pp. 739, 740.) (Emphasis mine.)

*Morse* v. *Granite County,* 19 Mont. 450, 48 Pac. 745, is cited in the majority opinion. There one Cain, while a county commissioner of Granite county, entered into a contract with the county commissioners to sell them certain furnishings for the county court house. Upon the allowance of Cain's claim for the merchandise delivered, a taxpayer of Granite county appealed from such allowance to the district court. The district court held the contract of sale of the property between Commissioner Cain and the county to be void because prohibited by statute. The contract being void, it was nothing. There being no sale, the title to the property still remained in Cain. The articles attempted to be sold were still there. They were in specie. Unlike the present cases, the merchandise had not been consumed. Thereupon Cain again took possession of his property and thereafter, for a valuable consideration and in good faith, he sold them to John W. Morse. While the statute prohibited Cain from selling to the county, it did not apply to Morse. Accordingly, this court held that under such circumstances Morse was not prohibited from reselling the goods to the county. Clearly, the *Morse case,* supra, may not be relied upon as an authority in the instant cases where the goods are no longer in specie but where same have been consumed.

*Argenti* v. *San Francisco,* 16 Cal. 255, is cited in the majority opinion and certain *obiter dictum* appearing therein is quoted. This was an action to recover from the city upon a contract for a street improvement. For its defenses, the city alleged that the contract had not been formally authorized by ordinance, and that it imposed an indebtedness in excess of the amount limited

by the city's charter. Neither of these defenses was sustained by the evidence and the court agreed that the contract was valid. Mr. Justice Cope delivered the opinion for the court in which he departed from the issues to say that a municipal corporation was bound by the same rules as a private corporation; that the statutory limitations on the contracting power were to be liberally construed and that even an absence of power to contract should not in all cases exempt the municipality from liability. On motion for rehearing in this case, Chief Justice Field wrote that he had concurred in the decision of the court solely upon the ground that the contract had been validly entered into and that he felt called upon to answer the *dictum* of Justice Cope, arguing that when the charter or some other statute provides a method of contract, such provision is a limitation upon the power of the municipal officers which negatives any liability for benefits received upon an agreement made in violation of such limitation, saying, ''I have been thus explicit, because I do not consider that, independent of such contracts, any liability would attach to the city for the improvement of the streets. * * * The doctrine of liability, as upon implied contracts, has no application to cases of this character.'' Two years later the same court decided the leading case of *Zottman* v. *San Francisco,* supra. This time Chief Justice Field was able to carry with him the entire court in denying any recovery to a contractor for work performed by him at the instance of the city's officers who had failed to observe the city charter's requirement of competitive bidding, saying: ''The law never implies an agreement against its own restrictions and prohibitions, or as it is expressed in the New York case [*Brady* v. *Mayor, etc., of New York,* 16 How. Proc., N. Y., 432], 'the law never implies an obligation to do that which it forbids the party to agree to do.' * * * The mere retention and use of the benefit resulting * * * does not constitute such evidence of acceptance that the law will imply therefrom a promise of payment.'' Justice Cope in a short concurring opinion repudiated the views he had previously expressed in the *Argenti case,* supra, asserting that his error was due to the fact that he had paid too little atten-

tion to the restrictive limitations of the charter and that such limitations applied with peculiar force to a corporation organized for a public purpose and that they necessarily restrict and limit the power of the city to contract in any other than the prescribed manner.

In *State ex rel. Lambert* v. *Coad,* supra, this court applied the doctrine of the *Zottman case,* supra. In *Missoula Street Ry. Co.* v. *City of Missoula,* supra, this court again expressed its approval and followed the doctrine there announced. In the *Missoula Street Ry. Co. case,* supra [47 Mont. 85, 130 Pac. 774], Chief Justice Brantly criticized certain decisions of the California court wherein he scented departures from the rule of the *Zottman case,* saying: "In these cases the court applied, to the contracts of a municipality, the principle of estoppel under the rules which are applicable to contracts between natural persons and private corporations, but, as was remarked by Chief Justice Beatty in his dissenting opinion in *Sacramento County* v. *Southern Pac. Co.* [127 Cal. 217, 59 Pac. 568, 825] : 'This doctrine sweeps away at once all limitations upon the power of the board, for it can readily be seen that the contractor must always have it in his power to commence work just as soon as he has induced the board to enter into a contract in defiance of the regulations intended to govern their action; and it is also apparent that the board, which desires to make contracts in disregard of the law, will have the same motive to allow the commencement of work that they have to enter into the illegal contract.' * * * The rule declared in the *Zottman case* was expressly recognized by this court in *State ex rel. Lambert* v. *Coad,* supra."

Both the *Argenti case,* supra, and *Morse* v. *Granite County,* supra, are cited in 93 A. L. R. at pages 442 and 444 in support of the rule there announced respecting the return of property illegally sold but remaining in specie. *School District No. 2 of Silver Bow County* v. *Richards,* supra, was a case of the above character, the property consisting of a victrola and a piano. These articles, of course, remained in specie. They could therefore be returned to the vendor without material injury to other

property although the plaintiff taxpayer was not required to either restore the articles or to offer to restore same to the vendors.

In *Bay* v. *Davidson,* 133 Iowa 688, 111 N. W. 25, 26, 9 L. R. A. (n. s.), 1014, 119 Am. St. Rep. 650, the court said: *"It matters not if he did in fact make his private interests subservient to his public duties. It is the relation that the law condemns, not the results.* \* \* \* That contracts such as are here complained of are against public policy is plainly manifest. The courts of the country, including this court, have repeatedly made pronouncement to that effect. And it is fundamental doctrine that a contract which is violative of public policy is void and will not be enforced. \* \* \* *That the town has received the benefits of the contract is not material.* This court is committed to the doctrine that the contract being invalid it cannot be rendered valid so as to support an action for recovery by invoking the doctrine of estoppel. \* \* \* Such is also the rule in most other jurisdictions. (15 Am. & Eng. Ency. p. 999, and cases cited in notes) ''. (Emphasis mine.)

In *State ex rel. Helena Waterworks Co.* v. *Helena,* supra [24 Mont. 521, 63 Pac. 105], this court held void a contract made by the city with a water company to furnish the city water. Acting under such void contract, the water company for two years supplied the city with water for fire, sewage and other municipal purposes for which the water company was not compensated. The water company by mandamus sought to compel the city to audit, allow and pay its claims for the water so furnished the city under such void contract. This court affirmed the district court in denying relief to the water company, holding ''that the contract itself is void, [and] any obligation flowing from it is void also.'' No restitution was required and this court said: ''It may be the decision of this case will work a hardship upon those whose money has been the means of supplying the city with water for the time disclosed by the pleadings. In this regard, 'it is only necessary to say that the settled principles of law cannot, with a safety to the public, be disregarded in order to remedy the hard-

ships of special cases.' (*Buchanan* v. *City of Litchfield,* supra; *Sanford* v. *Gates* [*Townsend & Co.*], 21 Mont. 277, 290, 53 Pac. 749; *Lake County* v. *Rollins,* supra [130 U. S. 662, 9 S. Ct. 651, 32 L. Ed. 1060].) * * *

"The importance of this case, because of the questions and amount involved, and the rights necessarily to be determined, has led us to give it most careful consideration, and, after so doing, we are of opinion that the judgment of the court below should be affirmed; and it is so ordered."

The above decision was later expressly approved by this court in *Helena W. W. Co.* v. *City of Helena,* supra [27 Mont. 205, 70 Pac. 515], where, in a special concurrence, Mr. Chief Justice Brantly said: "I desire to say further that I cannot see any escape from the conclusion reached in the *Helena case.* * * * It is the duty of the courts to declare the law as it is, and not to exercise their ingenuity in trying to devise means by which its clear and explicit injunctions may be evaded."

*State ex rel. Northwestern National Bank of Great Falls* v. *Dickerman,* 16 Mont. 278, 40 Pac. 698; *First National Bank of Nashua* v. *Valley County,* 112 Mont. 18, 113 Pac. (2d) 783, and *First National Bank of Goodhue* v. *Village of Goodhue,* 120 Minn. 362, 139 N. W. 599, 43 L. R. A. (n. s.), 84, are among the decisions cited in the majority opinion. These cases involve *money transactions* and have to do with the liability of a public corporation to *refund money received* of which it had the legitimate benefit. The liability of a public corporation for *money received* by it and used for a lawful purpose is one thing while the liability of a public corporation for *materials supplied* under a contract expressly forbidden by law is yet another thing. Under an annotation entitled, "Liability of public corporation for *money received* by it for unlawfully issued instrument of indebtedness" in 7 A. L. R. the *Dickerman case,* supra, is cited at pages 356 and 357 and the *Goodhue case* is cited at page 361.

It appears to me that the majority opinion overlooks the fact that different rules must be applied to the two different situations. These distinct rules are recognized by the author of Mc-

Quillin on Municipal Corporations wherein the rule applicable to liability to *refund money* is stated thus, "However, it is well settled that the doctrine of *ultra vires* cannot be invoked by a corporation, in the absence of some prohibitory law, to protect itself from liability to *refund money* which it has received and had the legitimate benefit of." (3 McQuillin Municip. Cor., 2d Ed. sec. 1274, p. 820.)

"On the other hand it is doubtful if there are any cases which hold that where a contract is of a class expressly forbidden by charter or statute, the acceptance of benefits raise an implied obligation." (3 McQuillan Municip. Cor., 2d Ed., sec. 1274, p. 820. See *Edison Electric Co.* v. *Pasadena,* 9 Cir., 178 Fed. 425, 431; *Williams* v. *Fargo,* supra; *Waisman* v. *Wagner,* supra; *American-LaFrance & Foamite Industries* v. *Arlington County,* supra; *City of Bristol* v. *Dominion Nat. Bank,* 153 Va. 71, 149 S. E. 632, 636; *Perry Water, Light & Ice Co.* v. *City of Perry,* supra.)

In *Independent School District No. 5* v. *Collins,* supra [15 Idaho 535, 98 Pac. 859, 128 Am. St. Rep. 76], the supreme court of Idaho said: "If money is illegally paid on such void contract, the district may recover it back, and, in case the district refuses to do so, any taxpayer of the district may for and on behalf of the district maintain an action for the recovery of money so illegally paid. However, the judgment in such cases should run in favor of the municipality whenever a recovery is adjudged. * * * It is contended that the only penalty provided in said statute is that an action cannot be maintained or recovery had against the district on such a contract. That being true, the money once paid on such void contract cannot be recovered back. We cannot agree with that contention. That statute was not intended to prevent the district or a taxpayer thereof for the district from recovering back any money paid by the district upon a void contract. The general rule is that money paid by a municipal corporation upon a void contract may be recovered back by such corporation; or, in case the proper authorities refuse to proceed to do so, a taxpayer thereof may do so for the corporation, and

this general rule is not changed or abrogated by said statute in such cases as the one at bar. * * *

"The general rule is that a taxpayer has a right to maintain an action to recover back money illegally paid on behalf of a municipal corporation when the officers neglect or refuse to perform their duty in that respect." (Citing cases.)

The above case was cited with approval by this court in *School District No. 2* v. *Richards,* supra. To same effect see the recent case of *Sioux Falls Taxpayers Ass'n* v. *City of Sioux Falls,* 1942, supra.

In *McNay* v. *Town of Lowell,* 41 Ind. App. 627, 84 N. E. 778, 782, a town was permitted to recover money paid out of its treasury to the vendor who was a town trustee for coal delivered to and consumed by the city. In affirming the judgment in favor of the town, the court said: "It is also urged that, since the town received and used the coal to its benefit, that appellant did not seek to make a profit, but in making the sales was acting in the utmost good faith and strict honesty, equity should come to his relief. But as a rule natural equity cannot flow from a violation of a prohibitive law, nor can good faith afford relief from the penalties of its infraction. (*Waymire* v. *Powell,* supra [105 Ind. 328, 4 N. E. 886] ; *Stone* v. *Bevans,* supra; *Chippewa, etc., Co.* v. *City [of Durand]*, supra [122 Wis. 85, 99 N. W. 603, 106 Am. St. Rep. 931].) This rule applies with full force to a case like the present, where the buyer is the seller and the claimant allows his claim to himself in defiance of a statute. Appellant was bound to know the law, and to appreciate the penalties of its violation. Appellant also urges that, before appellee is entitled to recover, it must return or offer to return the coal received. To so hold would, in effect, nullify the rules herein laid down. The coal has been consumed, and cannot be returned. To require like coal to be tendered before recovery would place upon the town a burden of inconvenience, as well, perhaps, as pecuniary loss, in case coal, at the time of such recovery, was at a higher price than when the sales were made, and thus also make a profit for the wrongdoer. * * *

"Courts are but human, and we are prone to let our sympathy for the one who with honest motives has subjected himself to heavy pecuniary loss lead us to relax the rigors of established legal principles. Therefore it has been said: 'Hard cases frequently made bad law.' But while the unfortunate position of appellant is to be regretted, under the facts disclosed, we, as a court, must be controlled by the imperative demands of the law applicable thereto, and have no power to grant either legal or equitable relief. (*Moss* v. *Sugar Ridge Tp.*, supra [161 Ind. 417, 68 N. E. 896].) The prohibition of the statute is imperative. It is a salutary law for the protection of the people, and experience has taught us that only the most vigorous enforcement of these protective statutes can insure to the people that security to which they are entitled. And the courts should not relax their force or impair their efficiency in any degree."

There can be no doubt about the legislative intent nor the public policy of this state. You "must not" do it. This is the language of the statutes. Not only once but repeatedly is this positive, simple, and unmistakable command given to the municipal officers by the legislature. (See secs. 444, 445, 447, 449, 5069, and 5071, Rev. Codes of Montana.)

The legislature had the power to enact the above statutes and having enacted them this court ought to accept the law as it finds it. We are prohibited from exercising the powers properly belonging to the legislature. (Constitution of Montana, Art. IV, sec. 1.) We should not, by judicial construction, nullify the express legislative mandates. " 'Our duty is not to enact, but to expound the law; not to legislate, but to construe legislation, to apply the law as we find it, and to maintain its integrity as it has been written by a co-ordinate branch of the state government.' " (*Nichols* v. *School Dist. No. 3*, 87 Mont. 181, 188, 287 Pac. 624, 628.)

Recognition of the right of the defendant corporations to restitution or to retain the moneys which have been illegally taken from the city's treasury and delivered to them, is but a method of invalidating the mandates of the prohibitory statutes

in question. Such equities as might otherwise surround defendants, if a question of public policy were not involved, must yield to the plain and express statutory provisions. The statutes were enacted by the legislature for the general welfare and protection of the public and particularly the taxpayers of the defendant city. To brush these statutes aside and to permit the defendant corporations to retain the money thus illegally taken from the city's treasury, not only in direct violation but in deliberate defiance of the mandates of the legislature, would leave the public without the protection conferred by the legislature.

"To permit the recovery such as this is supported by the great weight of authority. It applies to this case because the transaction in question is against the public policy and in violation of law." (*Sioux Falls Taxpayers Ass'n* v. *City of Sioux Falls,* 7 N. W. (2d) at page 140, decided by the supreme court of South Dakota, December 17, 1942.) Here have we found the rule and we should apply it to the cases presented. We have not the authority to invade the field reserved for the legislative department and change the rule. (Constitutional Law, 11 Am. Jur. sec. 198, pp. 900, 901.) This is a government of laws and, the laws enacted by the legislature cannot be disregarded by the courts. (*McManus* v. *Fulton,* supra.) While in the eyes of the law the confirmed criminal is as much entitled to redress as his most virtuous fellow citizen and no record of crime however long makes one an outlaw yet, when it appears that he who seeks the court's aid has violated the law in connection with the very transaction as to which he seeks legal redress then must that aid be denied him. It is denied in order to maintain respect for law; in order to promote confidence in the administration of justice; in order to preserve the judicial process from contamination.

Plaintiffs' demands are founded on right, justice and law. The defendant corporations should be required to pay back into the public treasury the moneys illegally taken therefrom and delivered to them, for they took it with full knowledge that it was "hot."

I think the judgment in each case should be reversed and that

the causes should be remanded to the district court with directions to enter judgments in favor of the plaintiff taxpayers who have been wronged.

MR. JUSTICE ERICKSON:
I concur in the dissenting opinion of MR. JUSTICE ADAIR.

Rehearing denied October 11, 1943.